(164 App. Div. 412)

## MOSCATO v. PRINCE LINE, Limited.

(Supreme Court, Appellate Division, Second Department. November 20, 1914.)

1. EVIDENCE (§ 587*)—CIRCUMSTANTIAL EVIDENCE.

    While an essential fact may be proved by circumstantial evidence, a finding of the factum probandum must rest on evidence, not only consistent with the fact to be established, but which fairly and reasonably excludes any other consideration.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2436; Dec. Dig. § 587.*]

2. TRIAL (§ 139*)—QUESTION FOR JURY—CIRCUMSTANTIAL EVIDENCE.

    Where the evidence of the party upon whom the burden of proof rests is circumstantial, and the circumstances are equally consistent with the absence and with the existence of the fact sought to be established, the case should not be submitted to the jury.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

3. MASTER AND SERVANT (§ 276*)—INJURY TO EMPLOYÉ OF CONTRACTOR—CAUSE OF DEATH—EVIDENCE.

    In an action for death of an employé of a contractor for chipping water ballast tanks in the holds of a vessel, in which it was shown that the only negligence that could be attributable to defendant was a defective ladder leading into one of the holds, circumstantial evidence *held* insufficient to show that deceased met his death by using the ladder.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

    Rich, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Grazia Moscato, as administratrix of Calogero Moscato, deceased, against the Prince Line, Limited. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Judgment and order reversed.

Argued before JENKS, P. J., and BURR, RICH, STAPLETON, and PUTNAM, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

150 N.Y.S.—15

Charles R. Hickox and Convers & Kirlin, all of New York City (L. De Grove Potter, of New York City, on the brief), for appellant.

Pierre M. Brown, of New York City (William F. Purdy, of New York City, on the brief), for respondent.

BURR, J. This action was brought to recover damages for the death of plaintiff's intestate, who was foreman of a chipping gang, employed by Rinelli & Guardino, contractors, who were under contract to chip or scale the tank tops and bilges of the steamship Afghan Prince, then lying at Pier 4, Bush docks, in the borough of Brooklyn. These tanks were water ballast tanks resting upon the bottom of the ship. The ship had three decks. The upper deck was known as the "shelter deck," the second in order as the "main deck," and the third or lower as the "between deck." It had six holds for the reception of cargo, numbered, from forward to aft, 1·to 6, inclusive. Hold numbered 6 was separated from hold numbered 5 by a bulkhead extending from the top of the tanks to the upper or shelter deck. A similar bulkhead, which, however, ran only from the tank top up to the between deck, separated hold numbered 5 from hold numbered 4. Hold numbered 4 was also divided into two tanks by a longitudinal bulkhead rising from the top of the shaft tunnel to the between deck, and the two compartments were designated the port and starboard deep tanks. Access to the holds was provided through hatchways, located one above the other in each deck.

Moscato was last seen, in a conscious condition, about half past 3 on the afternoon of March 11, 1912, when he was talking to a fellow workman in the lower part of the hold numbered 6. He then asked this workman for a candle, matches, and a hammer, and said that he was going to the forward part of the vessel to prepare some work for the next day. Apparently his purpose was to determine what work must· be done in either hold numbered 5 or 4, which were the only ones requiring attention at that time. Decedent did not say whether he was going to hold numbered 5, or to hold numbered 4, or, if to both, in which order. As the bulkhead between the holds numbered 6 and 5 extended up to the upper or shelter deck, it would seem that he must have proceeded to that deck in the first instance. When he reached the hatch over hold numbered 5, he could then descend to the between deck, or, still further down, to the tank tops, to determine what work was there required, and, returning to the between deck, then pass along that deck into hold numbered 4, as the bulkhead between these holds did not extend above that deck. Access to each of the holds was obtained through iron ladders fastened to the side of the hatch. In hold numbered 4, an iron ladder, placed slightly at an angle, extended from the shelter deck to the main deck. A short distance from the foot of this ladder, but not in direct continuation thereof, another ladder, placed perpendicularly, and about 8 feet long, led to the between deck. Two or more of the rungs of this ladder had been broken or disconnected a few days before, while discharging cargo; and this fact was known to the ship's officers. A short distance from the foot of this middle ladder, still another ladder, about 19 feet long, extended down into the hold upon the tank tops.

The evidence does not show what Moscato did, after he left hold numbered 6, nor where he went.   Nearly five hours afterward, or about 8 o'clock in the evening, it was reported that he was missing. A search was then made, and he was found lying, unconscious, in the aft port corner of the port deep tank in the hold numbered 4, at a point diagonally opposite, and distant about 12 feet from, the foot of the 19-foot ladder leading directly into this hold.   He never regained consciousness, and the next day he died.   Plaintiff's contention is that he fell while descending the broken ladder, and, striking upon the between deck, was thrown over the hatch coamings and down into the deep tank.

[1-3] Unless this is established by a fair preponderance of evidence, the defendant's negligence does not appear.   There is no claim of fault on defendant's part, other than in connection with such ladder. Not only does the evidence fail to establish this fair preponderance, but we think there is no evidence to show how decedent fell, where he fell, where he was at the time of his fall, or that, immediately prior thereto, he had been using the broken ladder.   There is certainly no direct evidence respecting either fact.   While an essential fact may doubtless be proved by circumstantial evidence, a finding of the factum probandum must rest upon something more substantial than surmise or conjecture.   It must rest upon evidence, not only consistent with the fact to be established, but which fairly and reasonably excludes any other consideration.   Cunard S. S. Co. v. Kelley, 126 Fed. 610, 61 C. C. A. 532;   Moore on Facts, 596, 600, 602.   As this learned author aptly says:

"It is not sufficient that they" (the facts relied upon) "be consistent, merely, with that theory" (that is, plaintiff's theory), "for that may be true, and yet they may have no tendency to prove the theory.   The sum of any number of zeros will always be zero."

When the evidence of the party, upon whom the burden of proof rests, is circumstantial in character, and the circumstances are equally consistent with the absence or with the existence of the fact sought to be established, the case should not be submitted to the jury; since, in that event, the burden of proof is not sustained, or, to put it concretely, if the circumstances of this case point equally to the absence as to the presence of defendant's negligence, or point in neither direction, plaintiff should be nonsuited.   Cordell v. N. Y. C. & H. R. R. R. Co., 75 N. Y. 330;   Geer v. N. Y. & P. T. & T. Co., 144 App. Div. 874, 877, 129 N. Y. Supp. 784;   Baulec v. N. Y. & Harlem R. R. Co., 59 N. Y. 356, 366, 17 Am. Rep. 325;   Henson v. Lehigh Valley R. R. Co., 194 N. Y. 205, 87 N. E. 85, 19 L. R. A. (N. S.) 790; Jones v. Ryan, 125 App. Div. 282, 284, 109 N. Y. Supp. 156;   Searles v. Manhattan R. Co., 101 N. Y. 661, 5 N. E. 66.

In passing from hold numbered 6, it was necessary, as we have pointed out, to go up to the shelter deck and thence forward.   If decedent descended the ladder in hold numbered 5 to the between deck, and then passed forward to the ladder leading to the deep tank in hold numbered 4, he would not make use of the broken ladder.   If he followed this route, concededly defendant is not liable.   This would be the more

natural course. Inspection was required in hold numbered 5, as well as in the one numbered 4; and this was nearer to the place of departure. If he made use of the other route, and, after reaching the shelter deck, went directly forward to the ladders leading into hold numbered 4, defendant is not liable, unless decedent fell while descending the second ladder, by reason of its defective condition. But he might have passed safely down this broken ladder, and stumbled over the loose dunnage wood, which was lying in great profusion about the coaming of the hatch opening into the lower hold; or he might safely have reached the lower hold or deep tank, and, while engaged in work therein, have fallen and sustained the injuries preceding unconsciousness.

In the case at bar the circumstantial evidence does not preponderantly establish that decedent made use of the broken ladder. No portion of the broken ladder was found near the place where his unconscious body lay, nor, in fact, at any other place. There is no dispute that the defect appearing in the ladder after the accident was in no respect changed from that previously existing. In this respect the case differs from Wilson v. New York Contracting Co., 129 App. Div. 125, 113 N. Y. Supp. 349, relied upon by the learned Justice at Trial Term, and Jones v. N. Y. C. & H. R. R. Co., 28 Hun, 364, where a broken rung was found at about the point where decedent attempted to board the train. See Kelly v. Erie R. R. Co., 53 App. Div. 465, 65 N. Y. Supp. 1046. Nor was it *necessary* for decedent to pass over the possible point of danger in order to reach his destination, as was the case in Hart v. Hudson River Bridge Co., 80 N. Y. 622. See same case, 84 N. Y. 56. There is some uncertainty in the evidence as to which rungs were missing from the ladder. We think that the credible evidence most favorable to plaintiff would indicate that it must have been either the third or fourth rung from the top of the ladder. If decedent had fallen this short distance, it is almost incredible that his body should have rebounded with sufficient force to carry it across the intervening space between the ladder and the hatch into the deeper hold, and over the top of the coaming protecting the same.

When decedent left his companion in hold numbered 6, at about half past 3 in the afternoon, he had with him a candle and a hammer. The candle was found lying by his body, but the hammer was not. There are three horizontal steel beams, called "box frames," one above another, extending transversely across the bulkhead between hold numbered 5 and that numbered 4, at the after end of the deeper portion of the latter hold. These form shelf-like projections about 5 feet apart, and extend out, less than a foot, from the bulkhead, at right angles thereto; their purpose being to strengthen the bulkhead. Decedent's body was lying beneath the lowest box frame. The hammer was found on the second box frame, which was about 6 or 7 feet from the bottom of the hold. It is almost impossible that, during his fall, he should have thrown the hammer with such accuracy that it alighted upon this narrow shelf and remained there. If, on the contrary, he, working upon this shelf or about it, had placed his hammer there, and subsequently fallen, its position is naturally and easily explained. If such was the case, he did not fall from

the broken ladder. The point where he was working with the hammer was below that.

It is doubtless true that, if the evidence supported both inferences, viz., that decedent fell from the ladder, or from some other cause, it would be the province of the jury in the first instance to determine the cause thereof, subject, of course, to the right of the court to reverse its finding if it was against the weight of the evidence. But, as it seems to us, there are no circumstances which support the former contention. The causes which led to decedent's fall rest wholly on conjecture. They are too doubtful and obscure to found any judgment thereon. Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216; Craig v. Laflin & Rand Powder Co., 55 App. Div. 49, 67 N. Y. Supp. 74; Bond v. Smith, 113 N. Y. 378, 21 N. E. 128; Gillon v. Boschen, 44 App. Div. 638, 60 N. Y. Supp. 659.

The judgment and order should be reversed, and a new trial granted; costs to abide the event.

JENKS, P. J., and STAPLETON and PUTNAM, JJ., concur. RICH, J., votes to affirm upon the opinion of Mr. Justice Blackmar at Trial Term.