CHARLES WICKS, as Administrator, etc., of CHARLES K. WICKS, Deceased, Respondent, *v.* COWPERTHWAIT COMPANY, Appellant.

Second Department, December 8, 1922.

**Motor vehicles — action for death of child — no proof as to how accident happened — no facts shown from which negligence could be inferred — verdict for plaintiff against weight of evidence.**

In an action to recover for the wrongful death of a child alleged to have been killed by defendant's automobile, which it was alleged was being operated negligently by defendant's servant, a verdict in favor of the plaintiff should be set aside as against the weight of the evidence, where no witnesses were called who saw the accident and there was no proof whatever as to how the child was killed and no facts from which an inference could be drawn that the child's death was caused by the negligence of the defendant, and where the only evidence was that the child left a schoolhouse some distance away from the street on which the accident occurred; that he had a sled with him; that just before the accident defendant's motor truck was proceeding along the street on which the accident happened at a high rate of speed and that immediately after the accident the child was in the arms of a man described as a chauffeur and that after the accident the defendant's motor truck was standing on the wrong side of the street about fifty feet beyond the point of the accident.

While direct proof of details is not required in death cases there should be positive proof of facts from which the inference of negligence can be drawn.

APPEAL by defendant, Cowperthwait Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 3d day of April, 1922, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*F. A. W. Ireland* [*R. M. McCormick* with him on the brief], for the appellant.

*Henry A. Uterhart,* for the respondent.

KELLY, J.:

The plaintiff sued to recover damages for the death of his infant son, a boy between eight and nine years of age at the date of the accident. The complaint alleges that on January 26, 1920, " while plaintiff's intestate was lawfully walking in a westerly direction along Westbury Avenue, at Caral Place, Mineola," he was struck by defendant's automobile truck operated by defendant's servants " in an easterly direction along the aforesaid Westbury Avenue," receiving injuries which resulted in his death. It is charged that defendant's servants in charge of its motor truck

45

operated it carelessly, unskillfully, negligently and unlawfully. Upon the trial, at the close of plaintiff's case, the complaint was amended so that instead of the allegation, " While plaintiff's intestate was lawfully walking in a westerly direction along Westbury Avenue," there should be substituted the allegation, " while plaintiff's intestate was lawfully upon a sleigh in Westbury Avenue." The plaintiff then rested and the learned trial justice denied defendant's motion to dismiss the complaint upon the ground that no negligence had been shown on the part of defendant. The defendant duly excepted to the ruling and rested without introducing any evidence. The jury found a verdict for the plaintiff in the sum of $2,000.

The plaintiff failed to call any witnesses who saw the accident. There was evidence that just before it occurred, defendant's motor truck was proceeding easterly along Westbury avenue at a high rate of speed, and witnesses were called who testified that immediately after the occurrence the little boy was in the arms of a man described as the chauffeur, in front of a grocery store on Westbury avenue, and the witnesses testified that they smelled liquor on the man who held the child, one of them stating that it looked to him as if the man was drunk. At the time these witnesses observed the man described as the chauffeur, the defendant's motor truck was standing on the north or left side of the road in the direction in which it had been going, about fifty feet east of the grocery store.

There was evidence that shortly before the accident the little boy had left a schoolhouse situated on a road running north and south at a considerable distance east of the grocery store, the school being located north of Westbury avenue, and the sister of the boy, herself but eight years of age, testified that her brother had with him a child's sleigh known as a " flexible flyer," which is a well-known variety of sleigh used by children, in which the child holding the sleigh runs to get a start and then throws it flat on the ground with his body prone upon it, guiding it by a crossbar and sliding along for the space caused by the impetus, if on level ice or snow a distance shorter than if the grade is down hill; that after they came out of the school decedent got on the " flexible flyer." But the little girl did not see her brother after leaving the school. She next saw him " when the man picked him up " opposite the grocery store, which, as has been stated, was on another road and at a considerable distance to the south and west of the school building. The accident occurred between two and three o'clock in the afternoon.

It appears from the evidence and the photographs in the record that in order to get from the school to the highway opposite the

grocery store the children might have come across lots from the school, which was "up on the hill" as testified to by plaintiff, but this was not the only course, because plaintiff, asked: "Q. But they have got to come over that lot to the east of Cembolski's store to come home?" answers, "A. No, they can go down the street or come across the lot as they are a mind to. Q. They can use that roadway, can they not? A. Of course, it is there, they can use it if they are a mind to." On the north side of Westbury avenue, immediately to the east of the grocery, there is a bank which is part of the elevated ground which continues to the east and north over to the school, but the photographs in evidence show a highway or road running north and south through this bank a short distance east of the grocery store and between the grocery and the highway upon which the school building is located.

There is no evidence in the record as to the route taken by these children or either one of them after leaving the school. They may have traveled along the road upon which the school building was located, south to Westbury avenue, and then turned west on Westbury avenue in the direction opposite to that in which defendant's motor truck was traveling, meeting it head on — or they may have come across lots over the considerable distance between the school and the grocery store.

No witness was examined who saw the accident or who told how it happened. The fact that the little boy was on the "flexible flyer" up at the school in no way justified the inference that he remained on it down to the locality of the grocery store. Whether he was "walking in a westerly direction, along Westbury avenue," as originally alleged in the complaint or "was lawfully upon a sleigh in Westbury avenue," as alleged by the amendment, there is no word of proof concerning his movements after leaving the school until he was seen cut and bruised in the arms of the man described as the chauffeur after the accident. The learned counsel for the plaintiff said to the court at the trial, " The boy starts off on a sleigh, comes down the hill, struck by the truck. The Court: Have we any evidence that the boy was sliding down the hill? Mr. Uterhart: Lillie testified that she saw her brother take the sleigh, it was a flexible flyer, and he started down-hill on the flexible flyer." Lillie was the eight-year-old sister of the dead boy. But she made no such statement, according to the record. On the contrary, she testifies: "Q. Did you notice what he did after you came out of school? Did he get on a sleigh? A. Yes. * * * Q. Did you see Charlie start to slide there on that hill on the flexible flyer? A. No, I did not see him start. Q. You did not see him sliding down the hill? Were you behind him?.

Was Charlie ahead of you? Do you understand what I mean, Lillian? I mean, Charlie went ahead of you, did he? " This was a rather lengthy and somewhat leading question for the child. She answers " Yes." " Q. You did not see him sliding down the hill? A. No. * * * Q. Tell us when you next saw Charlie after he started off with the sleigh when he came out of school. A. Next I saw him when the man picked him up." As I understand the argument of the learned counsel for the plaintiff at the trial and in his points (the case was submitted for respondent without argument in this court), he asked the court and jury at the trial, and he asks this court, to infer that immediately before the accident, the little boy, on his way home from school, had left Westbury avenue and gone up on the embankment immediately east of the grocery store and was sliding down into the avenue when he was struck by defendant's motor truck traveling at a high rate of speed. Or, that the little boy had come across lots from the school and, reaching the top of the embankment, had come down on his sleigh into the highway.

But this is all speculation and guess work — there is no evidence in the record upon which the court or jury could infer that the boy was sliding down hill on his sleigh when he came in collision with the motor truck or where he came from or how the accident occurred. Whether traveling west on the Westbury road, a wide level highway without obstruction to the view, on or off his sleigh he met the defendant's truck head on and in some way came in collision with it, or whether he came down the embankment on or off his sleigh in front of the motor truck and how far the motor truck was from him when he came into Westbury road (if he came down the embankment), is all left to speculation. If he came down the bank from the north, the grocery store building would prevent his seeing the truck approaching from the west, and on the other hand it would prevent the driver of the motor truck from seeing him until he came out into the road. The fact that after the accident the defendant's motor truck was standing on the north or left-hand side of the road, fifty feet from the point where the man held the child in his arms, justifies no inference of negligence because we do not know how it got there. *Non constat* it was traveling on the east or right-hand side of the road before the accident and turned to the left to avoid the boy, or it may have turned to the left after the accident. The fact that it was stopped in fifty feet would indicate that it could not have been traveling at the rate of twenty-five or thirty miles an hour when it struck the boy, if it did strike him. The grocer, who came out of his store after the accident and saw the " driver hold the boy in the hands,"

was asked: "Q. Did you look at the sleigh? A. No. Q. What is that? A. I don't look for the sleigh. Q. You did not look for the sleigh? A. I look on the sleigh, broke sleigh, because I have the sleigh lay right in front of the tree. By the Court: Q. You say the broke sleigh? A. Only one end broke. Q. Broken what, sleigh? A. Of the sleigh." Again, there is no evidence of how or where one end of the sleigh was broken or how it came to be "right in front of the tree" at the time the witness came out of his kitchen.

I cannot find any evidence in the record that the man who was holding the boy in his arms was the man who drove defendant's truck; there is no evidence as to who drove the truck or as to how many men were on the truck.

I reach the conclusion that despite the more liberal rules warranting inferences in cases of death by alleged negligence, there is on this record no sufficient foundation for any inference that the accident was occasioned by the negligence of defendant. If it be that there is justification for inference that the boy was in collision with the defendant's truck (which I do not concede), still there is nothing on which to base any finding of negligence because we do not know how the accident happened. Did the boy meet the truck as he was walking along the road as alleged in the complaint? Did the boy come across lots and attempt to coast down the bank across the course of the automobile? Did the boy coming along the road, leave it and go up the bank for the purpose of coasting down? There is a remarkable dearth of evidence on the essentials.

The respondent cites *Stump* v. *Burns* (219 N. Y. 306, 310), where it is said: "We have concluded that the question of the defendant's negligence was, upon the entire evidence, for the jury; therefore, the remaining question is whether or not the entire evidence proved that the intestate was guilty, as a matter of law, of contributory negligence. The fact that there was no direct proof of the acts of the intestate immediately preceding the stepping into the shaft does not render impossible the finding that he was free from contributory negligence. It has become the established law of this State that in an action to recover damages for a death negligently caused, the relevant conditions and circumstances surrounding and relating to the occurrence may be submitted to the jury, in the absence of such direct proof, in order that the jury may determine the inferences, if any, which they create;" and *Fagan* v. *Atlantic Coast Line R. R. Co.* (220 N. Y. 301, 310): "Direct or positive evidence that the negligence caused the injuries was not necessary. It has become the established law of this State

that in an action to recover damages for a death negligently caused, the relevant conditions and circumstances surrounding and relating to the occurrence, unless they interdict as a matter of law an inference or inferences necessary to the verdict, may be submitted to the jury, in the absence of direct proof, in order that the jury may determine the inferences, if any, which they create."

It is doubtless the law that direct proof of the details is not required in death cases, but there should be positive proof of facts from which the inference can be drawn. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.) It is said in that case (at p. 93): " It is entirely true that a material fact in a civil or criminal action may be established by circumstantial evidence, but the circumstances must be such as to lead fairly and reasonably to the conclusion sought to be established and to exclude any other hypothesis fairly and reasonably. It has been said that circumstantial evidence consists in reasoning from facts which are known or proved, in order to establish such as are conjectured to exist, but the process is fatally vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture. (*People* v. *Kennedy*, 32 N. Y. 141.) In order to prove a fact by circumstances there should be positive proof of the facts from which the inference or conclusion is to be drawn. The circumstances themselves must be shown and not left to rest in conjecture, and when shown it must appear that the inference sought is the only one which can fairly and reasonably be drawn from these facts. (*People* v. *Harris*, 136 N. Y. 429.) * * * It is a settled principle in the law of negligence which, it has been said, should never be lost sight of, that when the plaintiff's evidence is equally consistent with the absence as with the existence of negligence, the case should not be submitted to the jury since, in such a case, the evidence fails to establish the essential fact. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 357.) " In *Moscato* v. *Prince Line, Limited* (164 App. Div. 412, 415), this court said: " When the evidence of the party upon whom the burden of proof rests is circumstantial in character, and the circumstances are equally consistent with the absence or with the existence of the fact sought to be established, the case should not be submitted to the jury, since, in that event, the burden of proof is not sustained; or, to put it concretely, if the circumstances of this case point equally to the absence as to the presence of defendant's negligence, or point in neither direction, plaintiff should be nonsuited. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Geer* v. *N. Y. & P. T. & T. Co.*, 144 App. Div. 874, 877; *Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y. 356, 366; *Henson* v. *Lehigh Valley R. R. Co.*, 194 id. 205; *Jones* v. *Ryan*, 125

App. Div. 282, 284; *Searles* v. *Manhattan R. Co.*, 101 N. Y. 661.)"

In this case there is such entire absence of proof as to movements of the deceased boy immediately preceding the unfortunate accident that the verdict of the jury finding the driver guilty of negligence causing the death is pure guess work and speculation.

The judgment and order should be reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event.

BLACKMAR, P. J., RICH, MANNING and YOUNG, JJ., concur.

Judgment and order reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event.