PATRICK L. FEARICK, Appellant, *v.* LEHIGH VALLEY RAILROAD COMPANY, Respondent.

Second Department, November 21, 1924.

Railroads — action by locomotive fireman to recover under Federal Employers' Liability Act for injuries suffered — accident occurred while train was passing under bridge — plaintiff's head was struck by something when he climbed to top of tender — defendant not chargeable with maintenance of bridge — evidence does not establish cause of accident.

The complaint in an action brought by a locomotive fireman under the Federal Employers' Liability Act to recover damages for injuries suffered when his head was struck by something while he was climbing to the top of the tender as the train on which he was working was passing under a bridge, was properly dismissed at the close of plaintiff's case, since it was conceded that the bridge was not negligently kept and maintained by the defendant, and since there was an absence of proof of any dangerous condition caused by a projecting rod or bolt, and no proof that the defendant could have changed the structure of the bridge.

The complaint was properly dismissed on the further ground that there was no evidence as to the cause of the accident, that is, as to what came in contact with the plaintiff's head, as to his position at the time of the accident, and whether his head was in line with the alleged projection or bolt on the bridge.

APPEAL by the plaintiff, Patrick L. Fearick from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 18th day of June, 1924, upon the dismissal of the complaint at the close of the plaintiff's case.

*Frank F. Davis*, for the appellant.

*Clifton P. Williamson* [*H. S. Ogden* with him on the brief], for the respondent.

KELLY, P. J.:

The plaintiff brought this action under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143) to recover damages sustained while in the employ of defendant as a locomotive fireman engaged in interstate commerce. The plaintiff alleges that about one o'clock in the morning of April 6, 1922, at Wilkesbarre, Penn., while on the locomotive he attempted to climb over or stand on " coal gates " which held the coal back in the tender, for the purpose of getting a hook bar hanging on a bracket on the side of the tender and used for stoking the furnace, and that his head came in contact with a bolt or some part of a bridge crossing the main tracks of the defendant, severely injuring him.

The negligence charged against defendant is set out in the complaint, as follows:

" *Fifth.* That said accident and the consequent personal injuries to plaintiff were caused by the defendant without any fault or negligence of the plaintiff but solely by reason of the fault and negligence of the defendant and as follows: Said defendant at the time when and at the place where said accident happened had carelessly and negligently kept, maintained and allowed to be in an overhead bridge crossing its railroad tracks a projecting rod of iron fastened in said bridge and hanging down in a highly dangerous position directly above the railroad track on which the locomotive on which plaintiff was working was in motion; that plaintiff in passing on said locomotive engine beneath said bridge and projecting iron rod and while engaged in his duty of firing the same engine was violently struck in the head by said iron rod and thereby sustained the grave, serious and permanent injuries hereinbefore specified.   That defendant at the time of the happening of said accident and for a long time prior thereto knew and had known the dangerous condition and position of said iron rod or could by reasonable inspection have ascertained the same, but wholly failed and omitted to remove or change the same or correct its dangerous and defective condition.   That plaintiff had no knowledge or warning of the presence or condition of said rod prior to the happening of said accident.   That said negligent, careless, defective and dangerous condition and position of said iron rod had been allowed by defendant to exist and remain continuously for a long time prior to the happening of said accident without any change or correction by the defendant."

The defendant in its answer denied these allegations, alleged that any injuries sustained by plaintiff were caused by his contributory negligence, and that the risks and dangers connected with the situation at and about the time and place of the accident were open, obvious and apparent and were assumed by the plaintiff.

The learned trial justice granted the defendant's motion for nonsuit at the end of plaintiff's case upon the ground that plaintiff had failed to show any negligence on the part of defendant; that there was no evidence that defendant had anything to do with the maintenance of the structure in question, and no evidence that defendant had any notice of any defect in the bridge requiring it to do anything for the protection of plaintiff.

I think the learned trial justice was right in his disposition of the case for several reasons.   In the first place, the evidence does not disclose what caused the accident to plaintiff, what it was that struck him as the locomotive upon which he was working

passed under the bridge. He says something happened to him — he don't know what — and he " woke up " four days' later in the Wilkesbarre Hospital. He had a wound on his head, his skull was fractured.

He did not know what struck him, but on cross-examination he stated, " It was something on the bridge," and further cross-examination developed the fact that the " tank " or locomotive tender was full of coal about level with its sides. He says he did not go up on the coal in the tender. He had been talking to the engineer, who of course was in the cab of the locomotive, after the train left Wilkesbarre and left him for the purpose of getting the hook in question. To reach the hook he had to climb up on the " coal gate." He climbed up on the coal gate, and the moment he stepped on " these doors " his head struck something or something struck his head. When he stepped up on the doors or coal gate the locomotive was under the bridge. He knew the bridge was there. He knew it would not " clear a man standing on a box car." He testified that when he stood on the gate his head was above the top of the cab on the locomotive and above the coal, but how much above the cab or coal he could not say and " couldn't give you no idea."

Let us take the facts as elicited by the cross-examination. Plaintiff could not even give any " idea " how much higher his head would be than the top of the cab as he stood on the coal gate. He couldn't say that it was an " inch " higher, but he said, " My head was above the cab but I don't know how much."

The train was on the east-bound main track of the defendant railroad company. The bridge in question crossed the main tracks of the Pennsylvania railroad, the Central railroad of New Jersey and the tracks of defendant company. So it is evident that trains with locomotives and freight and passenger cars passed freely under the structure. It may be that we cannot take judicial notice of the height of a box freight car, or of the fact that they are higher than the ordinary tender of a locomotive loaded with coal and higher than the cab of a locomotive. We know that freight brakemen on top of these box cars have to avoid bridges. That is why the Railroad Law of New York (§ 71, subd. 2) requires the placing of " tell tales " to warn employees on top of the cars of the approach to an overhead structure. And the plaintiff says there were tell tales over the tracks on which his train was moving, 150 feet before the locomotive reached the bridge. At the time his locomotive passed this point he was standing on the floor of the ocomotive on the engineer's side talking to the engineer. Between that point and the bridge — in that 150

foot space — he left the engineer and started to climb up on the coal gate. The train was moving at the rate of fifteen or twenty miles an hour, so that it would be a matter of three or four seconds to travel the 150 feet between the tell tales and the bridge.

There were electric lights on the bridge. He had passed under it on trains many times day and night. He testified that as he climbed up to get the hook he was paying no attention to the bridge. He was forty-one years of age and had been working for defendant as a locomotive fireman on and off for nine years at the date of the accident.

Plaintiff called a witness, residing in Wilkesbarre, a miner, formerly a waiter in a restaurant and a painter, who made, or attempted to make, certain measurements at the bridge on the night before the trial, May 5, 1924, apparently between midnight and three o'clock in the morning. This was more than two years after the accident, which occurred on April 6, 1922.

The trial justice said plaintiff would have to prove that conditions were the same as at the time of the accident and let in the evidence on plaintiff's promise to prove the fact. The plaintiff did *not* prove this rather important fact, but the learned court refused to strike out the measurements testified to, although he said: " I don't think it has been connected, but I will leave it in for the purpose of this motion." But the " measurements " do not help the plaintiff and do not help this court on this appeal. It was fifteen feet four inches " from the top of the rail to the foot of the bridge," whatever that may be. There was a " projecting bar " over " that rail." (Referring to a rail marked X on Exhibit A, p. 84.) Plaintiff's counsel says " rail in the bridge." I assume he means the rail in the *track* under the bridge.

The witness says this " projecting bar " " projected under the stringer about six inches, I should judge." This bar was " about $2\frac{1}{2}$ or three inch iron " in diameter. The witness measured from the " bottom of the bar " to the " top of the rail." It was sixteen feet four inches. He did not measure the height of the rail and cannot tell the height. He made the measurements in the early morning of the trial from the bridge, by suspending " a string down from the bridge to the track." He measured from some bolt the location of which was *told to him* by plaintiff. Plaintiff did not point it out. The witness says he cannot swear to the inches; he says: " I didn't mark it down, I didn't mark the other down. * * * I won't swear it was anything." There are a number of figures shown on defendant's Exhibit A which are not identified or testified to in any way.

But there is no evidence in the record as to (1) the height

of the roof of the cab of the locomotive; (2) the height of the " coal gate; " (3) the height of the coal in the tender which plaintiff says was even with the sides of the tender; (4) the height of the floor of the tender or the locomotive.

There is no evidence from which the court can determine whether the plaintiff's head, if it projected above the roof of the cab as he stood on the " coal gate " was in line with the bolt or projection or whatever it may be. It is all conjecture. Something struck his head. There was a hole in the top of his cap. What it was we do not know.

This bridge and its appurtenances was not a bridge owned, controlled or maintained by the defendant. It was apparently a foot bridge owned or controlled by the city of Wilkesbarre.

I think there are two fatal defects in plaintiff's case:

1. Concededly the bridge was not negligently kept and maintained by defendant, nor was there proof of any dangerous condition of any projecting rod or bolt, nor was there evidence that defendant could, if it would, have changed the structure of the bridge.

2. There was no evidence as to the cause of the accident: (a) As to what came in contact with plaintiff's head — whether it was the " bolt " or " projection," or something thrown from the bridge, or a dozen other possible surmises; (b) as to his position at the time of the accident; (c) whether his head was in line with the alleged projection or bolt or not. Apparently this bridge had been in place a number of years. Trains were constantly passing under it. The plaintiff himself was entirely familiar with its location and had passed under it for a number of years.

I think on the vital elements of the case the cause of the accident is left entirely to conjecture.

When trains of freight cars were repeatedly passing under the bridge with brakemen on top of them warned by the tell tales and protecting themselves by lying down or squatting down on top of the box cars, it is hard to see how this locomotive fireman got his head high enough up to come in contact with the structure.

At any rate the burden of proof was on the plaintiff to prove the facts; to prove what struck him or to give evidence from which a jury might reasonably infer what struck him. This I think he failed to do. The plaintiff, a locomotive fireman, failed to show that the particular bolt which his witness attempted to measure came in contact with his head. The measurements made between two and three o'clock in the morning of the day of the trial, more than two years after the happening of the accident, are very indefinite, the witness at one point stating that he would not swear

to them, and that he could not tell the dimensions of the bolt. Whether the plaintiff's head struck this bolt or not was left to inference and speculation. There was no evidence as to the position of plaintiff's head with reference to this bolt. The duties of the plaintiff did not oblige him to place himself in a position where his head was higher than the cab of the locomotive. He knew the location of the bridge, which was lighted by electric lamps at night. He knew the location of the " tell tales." If, for some unexplained reason, he climbed up on the structure of the coal tender in the 150-foot space between the " tell tales " and the bridge, on a train moving at the rate of fifteen miles an hour, it would seem that the danger of coming in contact with the bridge was obvious. (*Southern Pac. Co.* v. *Berkshire*, 254 U. S. 415; *Jacobs* v. *Southern R. Co.*, 241 id. 229.) But whether his head was in line with this bolt referred to, or whether it came in contact with the main structure of the bridge or whether he was injured by something falling from the floor of the bridge, all this was left to speculation and conjecture. In death cases where there is no direct proof of the acts of decedent, all of the relevant conditions and circumstances may be submitted to a jury in order that they may determine by reasonable inferences whether deceased was guilty of contributory negligence (*Fagan* v. *Atlantic Coast Line R. R. Co.*, 220 N. Y. 301, 310), but there should be positive proof of the facts from which the inference of negligence on the part of defendant is sought to be drawn. (*Wicks* v. *Cowperthwait Co.*, 203 App. Div. 705.) It is said in *Ruppert* v. *Brooklyn Heights R. R. Co.* (154 N. Y. 90, 94): " It is a settled principle in the law of negligence which, it has been said, should never be lost sight of, that when the plaintiff's evidence is equally consistent with the absence as with the existence of negligence, the case should not be submitted to the jury since, in such a case, the evidence fails to establish the essential fact. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 357.)" In *Moscato* v. *Prince Line, Limited* (164 App. Div. 412, 415), this court said: " When the evidence of the party upon whom the burden of proof rests is circumstantial in character, and the circumstances are equally consistent with the absence or with the existence of the fact sought to be established, the case should not be submitted to the jury, since, in that event, the burden of proof is not sustained; or, to put it concretely, if the circumstances of this case point equally to the absence as to the presence of defendant's negligence, or point in neither direction, plaintiff should be nonsuited. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Geer* v. *N. Y. & P. T. & T. Co.*, 144 App. Div. 874, 877; *Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y. 356, 366;

*Henson* v. *Lehigh Valley R. R. Co.*, 194 id. 205; *Jones* v. *Ryan*, 125 App. Div. 282, 284; *Searles* v. *Manhattan R. Co.*, 101 N. Y. 661.) " Therefore, I think the learned trial justice was right in holding that there was no evidence of negligence on the part of defendant warranting submission of the case to the jury.

In addition to this the evidence failed to establish the negligence alleged in the complaint. The plaintiff alleged that the accident was caused solely by the negligence of the defendant in maintaining the bridge in question in a dangerous condition; that defendant knew or should have known of the alleged dangerous condition and failed to remove or change the same. But the evidence showed that the bridge in question was not owned or maintained by the defendant. No improper or unusual construction is claimed. It was a public bridge of the city of Wilkesbarre and defendant had no duty or power to alter or change its construction. Therefore, on the whole case I think the nonsuit was proper.

The judgment should be affirmed, with costs.

Present — KELLY, P. J., RICH, JAYCOX, MANNING and YOUNG, JJ.

Judgment unanimously affirmed, with costs.