[No. 29915. Department One. September 6, 1946.]

NETTIE M. PADDOCK, as *Administratrix, Appellant,* v. ROBERT TONE *et al., Respondents.*[1]

[1] Reported in 172 P. (2d) 481.

*Lynwood Fix*, for appellant.

*Wright, Innis, Simon & Todd*, for respondents.

BEALS, C. J.—Plaintiff, Nettie M. Paddock, as administratrix of the estate of her deceased husband, Joseph B. Paddock, instituted this action against Robert Tone and Sarah Tone, his wife, praying for judgment against defendants in the sum of ten thousand dollars for the benefit of herself and two minor daughters, alleging that on the evening of November 3, 1943, her deceased husband was a pedestrian crossing the Tacoma highway at the intersection of that highway with South 158th street some distance south of the city of Seattle, and that the defendant Robert Tone was then driving his automobile in a southwesterly direction on the Tacoma highway and drove his car so negligently and recklessly that he struck Joseph B. Paddock, inflicting upon him injuries from which he died a few minutes after the accident.

The defendants by their answer denied the allegations of the complaint, and by way of affirmative defense pleaded contributory negligence on the part of Joseph B. Paddock, and that his negligent acts were the proximate and contributing causes of the injuries which he suffered.

Plaintiff having denied the affirmative defenses contained in defendants' answer, the action was tried to a jury which returned a verdict in favor of the plaintiff in the sum of $3,250, whereupon defendants moved for judgment in their favor notwithstanding the verdict or, in the alternative, for a new trial. Plaintiff on her part moved for a new trial on the ground that the damages awarded to her by the jury were so inadequate as to conclusively indicate that the verdict must have been the result of passion or prejudice. Upon argument of the respective motions, the trial court denied both motions for a new trial, granted the defendants' motion for judgment in their favor for judgment notwithstanding the verdict, and dismissed the action with prejudice.

From this order, plaintiff has appealed, assigning error upon the granting of respondents' motion for judgment in their favor notwithstanding the verdict and upon the entry of judgment dismissing the action.

In this opinion we shall refer to respondent Robert Tone as though he were the sole respondent in the action.

For some distance to the north and south of its intersection with South 158th street, the Tacoma highway is straight, running generally in a northeasterly and southwesterly direction. The highway consists of four lanes paved with concrete, with a narrow unpaved strip in the middle. For some distance to the north the highway is straight and level. The highway is bordered by macadamized shoulders on each side of the concrete pavement, the shoulders being approximately fifteen feet in width. To the west, South 158th street, which runs approximately east and west, flares out as it reaches the highway to permit automobiles to more easily turn onto the highway. The street continues on the easterly side of the highway, but not in a direct continuation of the street, the southerly bound-

ary being nearly even with the northerly boundary of the street to the west of the highway.

At this point, and for some distance in each direction, the highway is unlighted.

From the evidence introduced, the jury might have found the following to be the facts in the case:

That, between four and four-thirty o'clock on the afternoon of November 3, 1943, respondent left Tacoma, where he resided, and, being alone in his car, drove to a house in the northerly part of the city of Seattle for the purpose of purchasing a chair. On his return trip, he passed through the business portion of Seattle between six and six-forty p. m. The day was cloudy and rainy, and it was already dark when respondent crossed the bridge over the Duwamish river on his way home. At about a quarter past seven, or two or three minutes earlier, respondent approached the intersection of the highway with 158th street. There was no traffic signal at this intersection, nor was any crossing indicated on the pavement of the highway. In the middle of 158th street is a small triangle, where stands a telephone pole bearing an arterial stop sign, several mailboxes being also in place. This area is without the limits of the city of Seattle.

Respondent's car was in good condition, its lights shining at the time of the accident, and there was no other traffic in the vicinity.

Mr. Paddock was thirty-nine years of age. He was discharged from the United States army in 1943. He obtained employment in Seattle, but planned to move with his family to Tacoma. He went to that city on the afternoon of November 3rd, where he made arrangements to resume work for a former employer. At about a quarter before six in the evening, he telephoned his wife that he would leave for home on the next stage. At about 6:55 p. m., a stage bound for Seattle stopped in front of a store known as "Dick's Market," located on the southerly side of the Tacoma highway approximately six hundred feet south of the intersection with South 158th street. The proprietor of the market, Dick Kuhn, had just closed for the day, having locked the front door. Mr. Kuhn, his wife, and Mrs. Voight, who had not

long before sold the store to Mr. Kuhn, were present. Hearing someone try the door, Mrs. Voight unlocked it, whereupon Mr. Paddock, who had tried the door, asked if there was an available lavatory. Mrs. Voight testified that Mr. Paddock

"... seemed to be in agony, and he didn't speak very loud, and I had to ask him again. I told him there was a gas station next door but I didn't know whether they were open or not, but if that wasn't open, to go to the one beyond";

indicating that the stations were to the north of the store toward Seattle. Mrs. Voight told Mr. Paddock that, if the nearest filling station was closed, he should go to a Texaco station located across the highway in a diagonal direction to the north at a distance of a few hundred feet from the market. The witness thought that Mr. Paddock was either intoxicated or very ill.

Mr. and Mrs. Kuhn, who heard and saw Mr. Paddock, gained the impression that he was intoxicated. They saw him leave the market and proceed in a northerly direction. They did not see him again until after the accident. No witness testified as to where Mr. Paddock went or what he did.

Respondent's car was approaching from the north, as respondent testified, at between twenty-five and thirty miles per hour; that his lights were shining and illuminated the highway in front of the car in the usual manner. Respondent testified that he was watching the road; that he was not listening to any radio program, and that, while he usually wore glasses, he was not wearing them at the time of the accident, as when driving at night he could see better without them. Respondent testified that, while driving at night, the lights bothered him if he wore his glasses. He also testified that he passed his driver's license test without glasses. He further testified that he did not see Mr. Paddock until an instant before the car struck him; that Mr. Paddock was coming diagonally across the highway; that he did not have time to sound his horn, but immediately applied his brakes; that Mr. Paddock rolled off the right side of the

automobile, which stopped almost immediately off the pavement; that Mr. Paddock was then lying on the shoulder of the highway off the pavement. Respondent further testified that he had been driving along the westerly lane of the highway, two to four feet from the westerly edge. He was unable to indicate on the map the exact point of the collision.

Harold J. Kuhn, who resided on South 158th street near the intersection with the highway, testified that, at the time of the accident, he was in his yard; that he heard a crash and the noise of brakes; that he could see the lights of the car, and that he saw the body of a man being thrown ahead of the car illuminated by the headlights. He estimated that the deceased was thrown about thirty feet, and that he immediately ran to the scene of the accident. He also testified that the car stopped thirty or forty feet beyond the point where the body came to rest. The witness marked on a map which was in evidence the points where the body was lying and where the car stopped. He testified that the body was lying on the shoulder of the highway opposite the middle of the southerly portion of 158th street.

Three witnesses testified that they talked with respondent after the accident, and that they noted upon him the odor of intoxicating liquor. Respondent denied that he had been drinking at all.

Captain Richard G. Quantz, of the state patrol, who arrived at the scene of the accident ten minutes or so after it had occurred, testified that, while respondent was greatly excited, he observed no evidence that respondent had been drinking.

There can be no question but that Mr. Paddock was terribly injured. He died at thirty-six minutes after seven o'clock.

As a result of the collision, the bumper of respondent's 1941 Chrysler sedan was dented, the grill work in the front of the car was bent, and the hood of the automobile was sprung.

George R. Tremblay, a brother-in-law of Mr. Paddock, testified that, two days after the accident, in a conversation with respondent, the latter admitted that he had been driv-

ing at a speed of from thirty-five to forty miles per hour. Apparently it was assumed throughout the trial that at the time and place of the accident the legal speed at which an automobile might be driven was thirty-five miles per hour. The court instructed the jury that the Tacoma highway was an arterial highway, and "that the maximum lawful speed at the place of the collision was thirty-five miles per hour." No exception to this instruction was taken by either party, and the instruction became the law of the case. Under the evidence and the instruction of the court, the jury might have found that respondent was driving at a speed of five miles per hour in excess of the legal limit, and that respondent had been drinking prior to the accident. We express no opinion as to the lawful speed.

Appellant in her complaint alleged that, at the time of the accident, Mr. Paddock was walking across the highway at its intersection with South 158th street from the east side of the highway to the west side thereof, and that, as he proceeded across the highway, respondent's automobile struck the deceased.

Appellant now suggests that the impact took place on the westerly shoulder of the highway, but the record contains no evidence upon which the jury might have based a finding that Mr. Paddock was walking or standing beyond the paved portion of the highway. The fact that the body of the deceased came to rest on the shoulder about six feet from the pavement is easily explained by the force of the impact throwing the body in the air and the fact that the body came to rest about thirty feet from the place of the impact.

The record is absolutely silent as to what Mr. Paddock did after he left Mr. Kuhn's store and as to his whereabouts from that time until the instant he was struck by the automobile. There is nothing to indicate where he left the east side of the highway, whether he crossed the highway at right angles or in a diagonal direction, or whether he had crossed the highway and was returning from west to east. It is, of course, quite possible that Mr. Paddock was crossing the highway from east to west in order to reach the rest room of the Texaco filling station on the westerly side of the high-

way as he had been directed by Mrs. Voight, but it is also possible that, after visiting that station, he was at the time of the collision crossing the highway from west to east in order to catch a stage and resume his ride to Seattle.

It is evident that Mr. Paddock was physically in bad condition. Whether he was ill or under the influence of intoxicating liquor, or both, cannot be determined.

Mrs. Richard Kuhn, who was standing about four feet from Mr. Paddock at the time Mrs. Voight talked to him, testified that Mr. Paddock mumbled his words; that "he seemed to be more or less in a daze than normal"; that as he left he fell against the door; that he staggered and felt his way along the side of the house until he disappeared into the darkness.

Richard Kuhn testified that he was standing near Mrs. Voight and heard Mr. Paddock ask for the use of a lavatory. He continued: "As he went I was still watching him, and he just fell along the building. He couldn't even stand up hardly."

Richard Kuhn testified that, as he knelt down beside Mr. Paddock to assist him immediately after the accident, Mr. Paddock "smelled pretty strong of liquor."

The highway was straight and level for a distance of approximately twelve hundred feet northeasterly from the place of the accident. There was no other traffic at the time, and there was nothing save the falling rain to interfere with a view of the headlights on respondent's car.

At the time of the accident, Mr. Paddock was wearing a combination leather-sweater coat of a greenish blue color and khaki trousers described by some witnesses as olive drab in color and by others as light summer khaki.

Appellant's opening brief is principally concerned with the question of the alleged contributory negligence on the part of Mr. Paddock, but whether or not upon the record it should be held, as matter of law, he had been guilty of such contributory negligence as would bar recovery in this action, is a secondary proposition.

That matter is not the principal question in the case. The assumption that the deceased was not guilty of contributory

negligence as matter of law does not relieve appellant from the burden of showing that respondent was guilty of primary negligence which constituted a proximate cause of the accident. The record clearly shows that respondent never conceded that he had been negligent in any particular, and that he did not rely exclusively upon the defense of contributory negligence.

The first question to be determined is whether or not the jury might find from the record that respondent had been guilty of negligence in striking Mr. Paddock, and that such negligence proximately contributed to Mr. Paddock's injuries and death.

Respondent seasonably challenged the legal sufficiency of the evidence introduced by appellant by moving to dismiss at the close of appellant's case and by renewing that motion at the close of all the evidence.

▮ A motion for judgment as matter of law notwithstanding the verdict of a jury admits the truth of the plaintiff's evidence together with all inferences reasonably to be drawn therefrom, and admits that the evidence should be interpreted in the light most favorable to the plaintiff. *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265; *White v. Fenner,* 16 Wn. (2d) 226, 133 P. (2d) 270; *Carroll v. Union Pac. R. Co.,* 20 Wn. (2d) 191, 146 P. (2d) 813; *Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973; *Mathers v. Stephens,* 22 Wn. (2d) 364, 156 P. (2d) 227; *Geri v. Bender, ante* p. 50, 168 P. (2d) 144.

The jury were entitled to consider the evidence as above stated.

It must be remembered that the exact spot where the collision occurred cannot be determined from the evidence. There is evidence that it occurred opposite the telephone pole in the center of South 158th street, but there is no evidence as to how far Mr. Paddock was from the western edge of the paved highway; whether he had just entered upon the pavement or was just about to leave it, or was walking along the pavement, or crossing it diagonally. Neither can the point from which respondent saw, or should

or could have seen, Mr. Paddock on the highway, be determined. The highway was unlighted, the last street light to the north being located at South 144th street.

Respondent testified that he did not see Mr. Paddock until practically the instant the car struck him.

Considering the evidence and lack of evidence, the question is whether the record is sufficient to support a jury's finding that respondent was negligent, and if he was negligent, whether the same was the proximate cause of the accident.

In 5 Am. Jur. 838, Automobiles, § 606, we find the following text:

"There is no presumption or inference as to the negligence of a driver of an automobile arising from the mere fact that it collided with another vehicle, struck a pedestrian, or caused other damage. Negligence in the operation of an automobile is not presumed. That the driver of an automobile did not know what happened when an accident occurred, or what caused the accident, does not raise a presumption that he was heedless and reckless in the operation of the automobile."

In 9 Blashfield, Cyclopedia of Automobile Law &.Practice (part 2, Perm. ed.) 560, § 6147, it is said:

"The burden is always on the plaintiff to prove his case or cause of action. It is incumbent on him to prove the averments of his complaint (or pleading corresponding thereto), and to establish the liability of the defendant and a right to recover.

"This burden is a continuous one; it does not shift to the defendant, but remains at all times on the plaintiff.

"*The plaintiff has the burden of proving how the accident happened. He must show what actually occurred, so as to enable the triers of fact to determine whether the defendant was negligent.*" (Italics ours.)

In the same volume, on page 517, § 6126, the rule is laid down that the plaintiff must also establish that the alleged negligence of the defendant was the proximate cause of the injury; and on page 520, § 6126, it is stated that:

"The burden of proving proximate cause is not sustained unless the proof is sufficiently strong to remove that issue

from the realm of speculation by establishing facts affording a logical basis for all inferences necessary to support it."

In *Wright v. Wilson,* 64 F. Supp. 694, the United States district court for the eastern district of Pennsylvania used the following language:

"The burden of proof was upon the plaintiff to show not only in what the defendant was negligent but also that his negligence in that respect was the proximate or efficient cause of the accident.

"It may be assumed for the purposes of ruling upon this motion that the jury should have been instructed, as requested by the plaintiff, that if the defendant's car was, at the time of the accident, even partly on the left side of the highway, that would have been negligence per se. It may also be assumed that there was sufficient evidence from which the jury could have found that the left side of the defendant's car was over the center line of the street, though this was more than doubtful. The fact remains that there was no evidence whatever from which the jury could have found that the defendant's conduct, in this or any other respect, was the proximate cause of the accident.

"Unless there is some evidence showing where a pedestrian came from or what he was doing just before being struck by an automobile, no one can possibly say that the accident was caused by the defendant's conduct. There is no such evidence in this case and consequently this plaintiff has failed to meet the burden of proof.

"It has been held many times that negligence consisting in the violation of a statutory duty by the defendant will not support a verdict unless it can be shown that such violation was the proximate cause of the injury. Nor can a plaintiff meet his burden of proving negligence merely by showing that he himself was free from contributory negligence, and that statement applies equally to his burden in the matter of proximate cause. In the present case, for example, the plaintiff was presumed to have been exercising due care and the jury so found but, so far as the evidence goes, he might, without any negligence on his part, have slipped or stumbled forward in front of the defendant's car or he might have been pushed or jostled by his companion, and the defendant would not have been liable for the accident."

In *Medina v. All American Bus Lines, Inc.*, 152 F. (2d) 61, the Federal circuit court of appeals for the fifth circuit said:

"The suit was for damages for injuries resulting in death. The claim was that plaintiff's decedent had come to his death as a result of the negligent operation of defendant's bus. At the conclusion of plaintiff's evidence, a motion for directed verdict was made and granted. Plaintiff is here insisting that, though the evidence was entirely circumstantial, it was sufficient to make an issue for the jury. Appellee insists that the evidence shows no more than that there was an accident, and that under settled law the proof that an accident occurred is not proof that it was negligently caused. It insists further that while negligence may be proved by circumstantial evidence, the authorities settle it that the circumstances must be such that an inference of negligence is not purely speculative in its nature.

"We agree with appellee's statement of the law, and a page by page search of the record leaves in no doubt that the evidence showed no more than that a collision occurred, its causes completely unexplained. In this state of the record, a directed verdict for defendant was demanded. The judgment was right. It is affirmed."

In the case of *Hadhazi v. Zero Ice Corp.*, 327 Pa. 558, 194 Atl. 908, the supreme court of Pennsylvania, in reviewing an order dismissing an action by a wife for damages resulting from the death of her husband, who was struck by an automobile belonging to the defendant, the order having been entered upon granting a compulsory nonsuit on motion of the defendant, quoted as follows from *Pfendler v. Speer*, 323 Pa. 443, 445, 185 Atl. 618, 619:

" 'There must be some evidence to indicate how the accident occurred. The mere happening of an accident does not prove that one of the parties was negligent. . . . The mere fact that a collision has occurred cannot, in the absence of evidence as to the manner of its occurrence, afford proof that one party and not the other was at fault. . . . If it be presumed that decedent was proceeding across the street carefully and lawfully, this presumption merely negatives contributory negligence as a factor. . . . It does not compel the conclusion that defendant was negligent. It is possible that neither party was at fault.' "

The court also quoted from the case of *McAvoy v. Kromer*, 277 Pa. 196, 198, 120 Atl. 762, as follows:

" 'Was he run down by the car, the driver of which could have seen him a sufficient length of time to have guarded against it? The accident occurred between crossings, did he suddenly run in front of the car; was he crossing the street heedlessly; was he crossing the street without regard to traffic, . . . or did the car suddenly swerve, striking him? All these circumstances are left to conjecture.' "

The court affirmed the judgment of dismissal.

The following authorities are also in point in this connection: *Miller v. Wilson*, 288 S. W. (Mo. App.) 997; *Comet Motor Freight Lines v. Holmes*, 175 S. W. (2d) (Tex. Civ. App.) 464; *Brooks v. Morgan*, 331 Pa. 235, 200 Atl. 81; *Lithgow v. Lithgow*, 334 Pa. 262, 5 A. (2d) 573; *Martin v. Marateck*, 345 Pa. 103, 27 A. (2d) 42; *Wicks v. Cowperthwait Co.*, 203 App. Div. 705, 197 N. Y. Supp. 481.

Any question of negligence on the part of respondent in not sounding the horn is eliminated by the instructions of the court, and, no error having been assigned in this connection, that matter may be disregarded.

■ Concerning the matter of the speed at which respondent was driving, the evidence is meager. Respondent testified that he was driving at a speed of from twenty-five to thirty miles per hour. Mr. Tremblay's testimony that, two days after the accident, respondent told the witness that he was driving from thirty-five to forty miles an hour could, of course, be considered by the jury. The violence of the impact and the severe resulting injuries to Mr. Paddock, together with the denting of the car and all other physical facts, could be considered by the jury, together with all the other circumstances of the case. *Hauswirth v. Pom-Arleau*, 11 Wn. (2d) 354, 119 P. (2d) 674; *Huber v. Rosing*, 22 Wn. (2d) 110, 154 P. (2d) 609.

While there is no evidence that respondent was under the influence of intoxicating liquor, testimony of witnesses to the effect that the odor of liquor was upon him, if believed by the jury, could be considered by them in connection with the question of what was a reasonable speed for him to be

driving his car under the circumstances. *Bates v. Tirk,* 177 Wash. 286, 31 P. (2d) 525; *State v. Birch,* 183 Wash. 670, 49 P. (2d) 921; *Garcia v. Moran,* 194 Wash. 328, 77 P. (2d) 988.

While the evidence upon the two matters last mentioned is rather weak, the jury might have found that respondent was driving at a rate of speed slightly in excess of the legal limit.

■ However, we find in the record no evidence upon which a finding by the jury could be based that such speed was a proximate cause of the accident. Several of the texts and cases above cited are particularly in point upon this question. The record containing no evidence as to the manner in which the accident was caused, it cannot be held that, if respondent was driving at an excessive speed under the circumstances, such speed was the proximate cause of the accident. This would be a mere guess and speculation.

Under the evidence, the possibility exists (and it is not a remote possibility) that the speed at which respondent was driving his car had nothing to do with the accident, which might well have occurred whether respondent was driving at a higher or lower rate of speed.

Respondent testified that he was observing the highway ahead of him.

■ This court has several times approved the rule that "a person will be deemed to have actually seen what could have been seen if he had looked." *Johnson v. Washington Route,* 121 Wash. 608, 209 Pac. 1100; *Bleiler v. Wolff,* 23 Wn. (2d) 368, 161 P. (2d) 145.

In the case of *Shephard v. Smith,* 198 Wash. 395, 88 P. (2d) 601, a pedestrian who was crossing a street near the crosswalk was struck by an automobile. The driver of the car admitted that he did not see the plaintiff until his car struck him, and we held that the admission was sufficient to take the case to the jury, as it could be inferred that the driver could and would have seen the pedestrian had he been observing the road ahead of him.

In the case of *Peterson v. Mayham,* 10 Wn. (2d) 111, 116 P. (2d) 259, we held that, as the driver of an automobile was confronted with a situation where the person injured

954

suddenly appeared in front of his car, no such inference was permissible.

We have repeatedly held that in collision cases between two automobiles or between an automobile and a pedestrian, each particular case must be decided upon its own state of facts. *Romano v. Short Line Stage Co.*, 142 Wash. 419, 253 Pac. 657; *Fosdick v. Middendorf*, 9 Wn. (2d) 616, 115 P. (2d) 679.

In the case of *Sellman v. Hess*, 15 Wn. (2d) 310, 130 P. (2d) 688, an action based upon alleged negligence brought by a pedestrian who was struck by the driver of an automobile, a case having some points of resemblance with the case at bar, this court reversed a judgment in favor of the plaintiff with instructions to dismiss the action; holding that the record contained no evidence sufficient to support a finding of negligence on the part of the driver of the automobile.

In the case last cited, we quoted from the case of *Pinckard v. Pease*, 115 Wash. 282, 197 Pac. 49, as follows:

" 'Negligence is not a positive thing; it is to be found according to the circumstances of each case, and must be determined in view of all the facts and conditions attendant at the time and place of the accident. Common sense is a better yardstick by which to measure the facts to determine the reasonableness of conduct in a given situation than any generalization laid down in the text books or decisions.' "

While in the *Sellman* case there was no question of excessive speed on the part of the driver of the automobile, upon the other facts presented, the case was very similar to the facts in the case at bar.

■ No witness saw Mr. Paddock on or crossing the highway. There is no evidence tending to show or from which it could be inferred how far respondent's car was from the point of impact when Mr. Paddock entered upon the paved portion of the highway and came within a zone of danger. Neither does it appear in which direction he was proceeding when struck by the automobile. Had it appeared that Mr. Paddock was crossing the highway from east to west, the jury might have inferred that respondent could have seen him in time to avoid the accident. On the other hand, if Mr.

Paddock had entered the highway from the west just prior to the instant respondent's car came along, an entirely different situation would be presented. There are other possibilities which might have important bearing on the situation.

In view of the lack of evidence as to these basic facts, it is impossible to state positively or to infer that respondent saw or could or should have seen Mr. Paddock in time to avoid the collision.

Appellant cannot claim the right to have the jury pass on the case under the doctrine of last clear chance. No element of that doctrine is applicable to the facts before us.

Appellant cites several of our authorities in support of the contention that the evidence discloses a case upon which the jury were entitled to pass. The opinions in the cases cited all show states of facts which are readily distinguishable from those present in the case at bar.

We are convinced that upon the record the trial court did not err in granting respondent's motion for judgment in his favor notwithstanding the verdict and in dismissing the action; and the judgment is accordingly affirmed.

MILLARD, STEINERT, SIMPSON, and MALLERY, JJ., concur.