THE SAN JUAN.

(Circuit Court of Appeals, Second Circuit. February 20, 1918.)

No. 119.

1. SEAMEN ⊂⊃4—ACCOMMODATIONS—CONSTRUCTION OF SEAMEN'S ACT.

In Seamen's Act March 4, 1915, c. 153, § 6, 38 Stat. 1165 (Comp. St. 1916, § 7734), amending Act March 3, 1897, c. 389, § 2, 29 Stat. 688, and requiring certain space and accommodations for the crew to be provided on "all merchant vessels of the United States the construction of which shall be begun after the passage of this act," the words "after the passage of this act" refer to the act of 1915, and not to the act of 1897, and the provisions are not retroactive, and do not apply to a vessel built between 1897 and 1915.

2. STATUTES ⊂⊃263—CONSTRUCTION—RETROACTIVE EFFECT.

The intention of Congress to make statutory requirements retroactive should not be collected by implication, unless such implication is plainly necessary.

Appeal from the District Court of the United States for the Southern District of New York; Martin T. Manton, Judge.

Petition by the New York & Porto Rico Steamship Company, owner of the steamship San Juan, for a writ of mandamus against George T. Charlton and others, as Local Inspectors of Steam Vessels, etc. From an order granting the writ (241 Fed. 288), respondents appeal. Affirmed.

Certiorari was denied by the Supreme Court. 247 U. S. ——, 38 Sup. Ct. 582, 62 L. Ed. ——.

Francis G. Caffey, U. S. Atty., of New York City (John Hunter, Asst. U. S. Atty., of New York City, of counsel), for appellants.

Burlingham, Montgomery & Beecher, of New York City (Roscoe H. Hupper, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is an appeal from an order of Judge Manton granting a peremptory writ of mandamus directing the local inspectors of steam vessels for the port of New York, and Henry M. Seeley, supervising inspector of steam vessels for the Second district, the former to make, subscribe, verify, and deliver, and the latter to cause to be made, subscribed, verified, and delivered, to the petitioner a certificate of inspection and approval of the steamship San Juan and her equipment, pursuant to section 4421, Rev. Stat. U. S. (Comp. St. 1916, § 8182), and acts supplemental to and amendatory thereof.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The steamer was built at Wilmington, Del., in the year 1900, and is duly enrolled and licensed in the port of New York, and employed to trade between ports of the United States and ports of the island of Porto Rico. The petitioner, the New York & Porto Rico Steamship Company, owner of the steamer, on or about February 6, 1917, because her certificate of inspection and approval was to expire on the 17th, applied for a new certificate; but the local inspectors refused to grant one, on the ground that the steamer failed to conform to the requirements of section 6 of the Act of March 4, 1915 (38 Stat. 1165, c. 153 [Comp. St. 1916, § 7734]), known as the Seamen's Act. The petitioner applied to Henry M. Seeley, supervising inspector, who refused to revoke, change, or modify the decision of the local inspectors, and thereupon it applied to the District Court of the United States for the Southern District of New York for a writ of mandamus.

[1] The steamer conformed entirely to the requirements of section 2 of the Act of March 3, 1897 (29 Stat. L. 688, c. 389), when she was built, and down to the passage of the Seamen's Act of March 4, 1915. The question is whether the amendment of section 2 of the act of 1897 by section 6 of the act of 1915 is retrospective, and applies to vessels built before the act of 1915 was passed. Section 6 of the Seamen's Act reads:

"That section 2 of the act entitled 'An act to amend the laws relating to navigation approved March 3, 1897,' be and is hereby amended to read as follows:

"Sec. 2. That on all merchant vessels of the United States the construction of which shall be begun after the passage of this act. * * * *"

And then follow the changes, which increase the space in the sleeping quarters of the crew theretofore required, restrict the berths to two tiers, and require washing places, with hot and cold water, and a sufficient number of basins, sinks, and shower baths to be provided, and a suitable compartment for a hospital. The act of 1897 applied to all sea-going vessels of the United States with certain exceptions not material in this case, and section 2 discriminated between sailing vessels built before and after June 30, 1898.

The government contends that the amendment repeals by implication section 2 of the act of 1897, so that the act must now be read as if it had always read as amended. It is said that, if it were to be read as of 1915, vessels built between 1897 and 1915 would be subject to no regulation at all. We see no difficulty in holding (if it be consistent with the intention of Congress) that the act of 1897 reads as originally passed down to 1915 and thereafter as amended.

Certain authorities are relied on by the government which do not, in our opinion, support its contention. In Ely v. Holton, 15 N. Y. 595, a case was pending in which a new trial had been ordered in May, 1856. The Code of Procedure was amended in January, 1857, "so as to read as follows"—the only change being a right to appeal from an order awarding a new trial. The plaintiff took an appeal after the amendment, and the defendant moved to dismiss. The court granted the motion on the ground that the amendment applied only to judgments thereafter rendered. In answer to the contention that the act

was to be construed as if it had always read as amended, the court said that the provisions of the original act applied to judgments entered before the amendment and the provision of the amendment applied to judgments entered thereafter.

In Moore v. Mausert, 49 N. Y. 332, the act of 1854, giving mechanics' liens, required a notice of lien to be filed in the office of the town clerk. It was amended in 1869, so as to require the notice to be filed in the office of the county clerk. One who had furnished materials before the amendment filed his lien after the amendment in the office of the town clerk. The court said that, following the Ely Case, where something was omitted from the original statute, it should be held to be abrogated from the time the amendment became operative, from which it followed that the notice of lien filed after the amendment in conformity with the original act was ineffectual. We suppose that, if notice of lien had been filed before the amendment, no one would have contended that the amendment made it invalid.

In Benton v. Wickwire, 54 N. Y. 226, 229, Reynolds, C. J., said:

"There was once, and long ago, a rule in the construction of statutes that an amendment of it was to be regarded as if having been incorporated in and made a part of the original enactment; but that rule has been for a long time disregarded, and it is now settled that an amendment has no more retroactive effect than an original act upon the same subject. Ely v. Holton, 15 N. Y. 595; People v. Carnal, 6 N. Y. 463. Neither original statutes nor amendments can have any retroactive force, unless in exceptional cases the Legislature so declare. This case is not one, and the legislative amendment of 1871 is not at all favorable to the plaintiffs' position."

This language was cited with approval in Matter of Warde, 154 N. Y. 342, 344, 48 N. E. 513. See also Kelsey v. Kendall, 48 Vt. 24.

Blair v. Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801, was an instance where the amendment was treated as if taking effect from the date of the original act, so as to be consistent with other unchanged parts of the act. Section 1 of the act of 1859 gave a charter of 25 years to the Chicago City Railway Company, and section 10 gave the same rights as conferred upon that company to the North Chicago City Railway Company. The act of 1865 amended the first section of the act of 1859, so as to make it read 99 years, instead of 25 years. The court held that the tenth section was to be read as if the original act gave a charter for 99 years; in other words, the North Chicago City Railway Company was to have the same rights as the Chicago City Railway Company.

[2] While Congress had unquestionably the right to make these requirements retrospective, its intention to do so should not be collected by implication, unless such an implication is plainly necessary. 20 Per Cent. Cases, 20 Wall. 179, 187, 22 L. Ed. 339. We do not find this to be the case.

The order is affirmed.