## LINDGREN v. SHEPARD S. S. CO.
### No. 79.

Circuit Court of Appeals, Second Circuit.
Jan. 15, 1940.

Corydon B. Dunham, of New York City, for appellant.

George J. Engelman, of New York City, for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is an action brought by a, seaman to recover damages for injuries sustained while a member of the crew of a vessel owned and operated by the defendant. The first count of the complaint was grounded on a charge of negligence. On this cause of action the jury found in favor of the defendant and the complaint was dismissed. No appeal was taken by either party from this part of the judgment. Another count in the complaint asserted a cause of action for maintenance and cure. On this the jury awarded the plaintiff a

verdict of $3,000 and judgment was entered thereon, with costs. The defendant has appealed from this part of the judgment. Its main contention is that the court erred in refusing its motion to dismiss the alleged cause of action without submission to the jury.

In August 1937 Lindgren signed shipping articles as an able bodied seaman for a voyage from the port of Philadelphia to Pacific coast ports and return. At the time he shipped, although neither he nor the defendant knew it, he was infected with syphilis of long duration and in its tertiary stage. During the course of the voyage, while lifting a heavy tarpaulin, he slipped and fell. Following the fall he became dizzy, was partly paralyzed on the left side, and temporarily lost the power of speech. A day or two later he recovered sufficiently to do light work. Before reaching Portland, Oregon, he suffered another similar attack while lifting a heavy plank. At Seattle, Washington, he went to a hospital for examination and was told by the doctor that he might have syphilis and that he ought to obtain hospital treatment as soon as he got back to New York. On the return trip he was given light work and was able to work every day. Early in November the vessel arrived at Philadelphia and Lindgren was paid off. He went to New York by train, and the second day after arrival experienced another attack. On November 12, 1937 he was admitted to the United States Marine Hospital at Stapleton where his condition was diagnosed as general paresis resulting from tertiary syphilis. He remained there for about a month and was then transferred to the Marine Hospital at Ellis Island where he remained until February 6, 1939. On that date he was discharged from in-patient treatment but was told to return in about three months for examination. Up to the date of the trial on April 6th he had been able to obtain no employment, and his board and lodging had been supplied by relief agencies at the rate of $4 per week. He claimed maintenance of $2.50 per day. He had, of course, incurred no expenses for medical care or maintenance while he was in the marine hospitals. Shortly before the trial the plaintiff was examined by a doctor of his own selection and by one representing the defendant. Their testimony was in substantial accord as to the plaintiff's condition. He has general paresis resulting from tertiary syphilis; he is cured so far as cure is possible but he will never again be able to do the work of an able bodied seaman; he can, however, do light work, such as that of a watchman. As a hospital out-patient he should return for occasional examinations and treatment, but such treatment is to prevent relapses, not to effect further cure, which is impossible.

Much of the argument in the briefs has revolved around the appellant's contentions that a seaman is not entitled to maintenance and cure for disability arising from syphilitic condition of long standing and undisclosed to the vessel owner when the seaman's contract of employment was entered into. In our view of the case these arguments need not be discussed. We rest decision upon the principle that a shipowner's duty to furnish maintenance and cure to a seaman suffering from an incurable disease which manifests itself during his term of employment does not extend beyond the time when he is as completely cured as he ever can be. Lindgren had attained this condition free of cost at the date of his discharge from the Marine Hospital fifteen months after the termination of his voyage. There is medical testimony that he will need periodic examinations and treatments for the rest of his life, but such treatments are to prevent relapses, not to effectuate further cure. Dr. Swetlow testified that the disability that he found upon examining the plaintiff on March 28, 1939 was permanent.

The doctrine of maintenance and cure has recently been thoroughly examined by Mr. Justice Stone in Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. In that opinion he said 303 U.S. at page 530, 58 S.Ct. at page 654, 82 L.Ed. 993:

"But we find no support in the policies which have generated the doctrine for holding that it imposes on the ship owner an indefinitely continuing obligation to furnish medical care to a seaman afflicted with an incurable disease, which manifests itself during his employment, but is not caused by it. So far as we are advised, it is without support in the authorities. We can find no basis for saying that, if the disease proves to be incurable, the duty extends beyond a fair time after the voyage in which to effect such improvement in the seaman's condition as reasonably may be expected to result from nursing, care, and medical treatment. This would satisfy such demands of policy as underlie

the imposition of the obligation. Beyond this we think there is no duty, at least where the illness is not caused by the seaman's service.

"The award of a lump sum in anticipation of the continuing need of maintenance and cure for life or an indefinite period is without support in judicial decision. Awards of small amounts to cover future maintenance and cure of a kind and for a period definitely ascertained or ascertainable have occasionally been made. The Mars, 3 Cir., 149 F. 729, 730; Wilson v. Manhattan Canning Co., D.C., 205 F. 996, 997. But the award here seems to us to be inconsistent with the measure of the duty and the purposes to be effected by its performance. The duty does not extend beyond the seaman's need."

 Counsel for the plaintiff, seizing upon statements in Mr. Justice Stone's opinion to the effect that the court is not passing upon a case where the seaman's disease or incapacity was caused by his service, contends that the Calmar decision is inapplicable to the case at bar because the first onset of Lindgren's paresis was caused by his fall or exertion while lifting the heavy tarpaulin; or at least the jury might so have found in view of Dr. Swetlow's testimony. The facts in the two cases appear quite similar. Taylor sustained an injury to his foot in the ship's boiler room and following this injury he was found to be afflicted with Buerger's disease, an incurable and progressive malady of the veins and arteries. It would seem that his accident lighted up a preexisting diseased condition, much as did Lindgren's. Therefore, we are disposed to think that the Supreme Court, in noting that Taylor's incurable disease was not caused by his employment, was not excluding a case where the seaman's service aggravated a preexisting disease but one where it produced a disease that he had not previously had. But however this may be, and even if the Calmar case can be differentiated from the case at bar, we are convinced that a shipowner's duty to provide maintenance and cure ends when the seaman has attained the maximum cure possible. In Reed v. Canfield, Fed.Cas. No. 11,641, C.C.Mass., Mr. Justice Story remarked (20 Fed.Cas. 426, at p. 429, No. 11,641):

"The sickness or other injury may occasion a temporary or permanent disability; but that is not a ground for indemnity from the owners. They are liable only for expenses necessarily incurred for the cure; and when the cure is completed, at least so far as the ordinary medical means extend, the owners are freed from all further liability."

To similar effect is The Kenilworth, D.C. E.D.Pa. 139 F. 59, affirmed 3 Cir., 144 F. 376, 4 L.R.A.,N.S., 49, 7 Ann.Cas. 202; see also The Bouker No. 2, 2 Cir., 241 F. 831, 835. The charge correctly stated that Lindgren was entitled to maintenance only for such reasonable time as to give him the best cure possible. But since without expense to himself he had obtained such cure as was possible by February 6, 1939, the defendant was under no duty to care for him for any further period. Consequently we think the count for cure and maintenance should have been dismissed without submission to the jury. There was no issue of fact to be determined by the jury that could justify an award. Judgment reversed.