## REY v. COLONIAL NAV. CO.
### No. 50.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1941.

Gazan & Caldwell, of New York City, for appellant.

Hatch & Wolfe, of New York City (Carver W. Wolfe and Eli Ellis, both of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

■■ This is an action by a fireman employed on the defendant's steamship Comet from March 21, 1937 to March 5, 1938. The vessel plied between New York and Providence, Rhode Island. The complaint alleges that by reason of the defendant's negligent failure to provide suitable sleeping quarters for the crew the plaintiff contracted pulmonary tuberculosis which still impairs his health and his earning capacity. The first count is based on the Jones Act, 46 U.S.C.A. § 688; the second on the general maritime law relating to maintenance and cure. During the trial the complaint was amended to charge that the defendant operated its vessel in violation of 46 U.S.C.A. § 80. This statute applies only to vessels constructed subsequent to its enactment, The San Juan, 2 Cir., 250 F. 93; as there was no proof regarding the age of the Comet, the amendment may be disregarded. At the close of the plaintiff's evidence, the trial judge dismissed both counts of the complaint for failure of proof.

■■ It is well settled that under the Jones Act the negligent failure of a shipowner to furnish a seaman safe appliances and a safe place in which to work is actionable. Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082; Howarth v. U. S. S. B. E. F. Corp., 2 Cir., 24 F.2d 374. That the owner's duty also extends to providing safe quarters for the crew is assumed by both appellant and appellee; and rightly so, although judicial decisions on the precise point are few and have more often assumed than discussed the rule. See McCall v. Inter Harbor Nav. Co., 154 Or. 252, 59 P.2d 697; Stevens v. R. O'Brien &

Co., 1 Cir., 62 F.2d 632; The Norland, 9 Cir., 101 F.2d 967; Curtis Bay Towing Co. v. Dean, 174 Md. 498, 199 A. 521.

■■ The sole question presented by the appeal is whether the evidence was sufficient to have required leaving the case to the jury. The sleeping quarters of the firemen were in a room below decks to which access was had by an enclosed stairway leading down from the freight deck. The complaints against these quarters are lack of ventilation and excessive dampness. There were no port holes in the room and the air which entered it came from the freight deck down the stairway. Except in rough weather the freight deck obtained outside air through open port holes. There was an opening in the sheathing enclosing one side of the stairway and an electric fan was placed in the firemen's room adjacent to this opening. The testimony refers to the fan as an "intake fan", although there is some dispute whether it' sucked air through the opening or merely stirred the air within the room. A wooden partition, with a doorway, divided the firemen's quarters from the room aft in which the negro waiters slept. In their room was a good-sized exhaust fan with a vent leading to the open air above decks, the control switch being on the bridge. The exhaust fan was evidently adequate to draw the air from the firemen's room as well as from the waiters', for there was testimony that it stirred up dust in the firemen's quarters. No expert witness was called to testify that this system of ventilation was insufficient. On the contrary it appears that the firemen's quarters were inspected every three months by the United States Local Inspectors and no change in them was ever required; and the chief engineer of the ship testified without contradiction that the quarters in respect to ventilation were about the same as in the average run of vessels of the same class. In support of his charge of faulty ventilation Rey testified that "There was no air and it was hot and there was no ventilation and we can't sleep in there", although in another connection he also testified that he slept "all right, slept long", and felt well up to the very day before he left the ship. Another fireman, Barela, said that the exhaust fan did not keep the air "good" in the firemen's room. Other firemen found no fault with the quarters. To prove a ventilating system so insufficient as to render the shipowner liable for negligence in providing unsuitable quarters, we believe some expert testimony should be required. But in any event testimony of the character here adduced on behalf of the plaintiff could not be allowed to overcome the uncontradicted evidence that the ventilation of the firemen's quarters was passed by the Local Inspectors and was as good as in other ships of the same class. The evidence as to improper ventilation was too slight to be submitted to the jury.

■ As to the charge of excessive dampness the plaintiff made a somewhat stronger showing. There was proof on his behalf, though contradicted, that the radiator continuously leaked considerable quantities of water; that the skin of the ship and the steel bulkhead adjacent to Rey's bunk sweated; that his bedding was constantly damp; and that the toilet room was often wet and dirty. Whether there was sufficient evidence of negligence in these respects to require submission to the jury we need not say, because there was no evidence that these conditions were the proximate cause of his tuberculosis.

Rey testified that until March 4, 1938 he never felt sick. The following day he went to a hospital in Providence, R. I., where his condition was diagnosed as bronchial pneumonia. He remained there until March 19th. He then came to New York and went to the U. S. Marine Hospital at Hudson and Jay Streets on the 21st. There his case was diagnosed as chronic pulmonary tuberculosis. On the 24th of March he was admitted to the Marine Hospital on Ellis Island. The diagnosis was chronic pulmonary tuberculosis and tertiary syphilis. He was discharged from the hospital June 29, 1939. The present action, which was commenced in April 1938, came on for trial in October 1939. The only medical testimony was that of Dr. George Lang. He had examined the plaintiff in April 1938 and again just before the trial. He testified that the conditions on shipboard and the existence of tertiary syphilis would lower the plaintiff's resistance and would be a competent producing cause of the development of tuberculosis; that "he may have had his resistance lowered as a result of one of several causes", because of syphilis or because of the conditions ·on shipboard, although he believed the latter the more likely factors. But he expressed no opinion, for he was not asked,· as between the assumed conditions as to ventilation and the assumed conditions as to dampness in the firemen's quarters. ·As has

been already shown, the evidence was insufficient to impose liability upon the defendant for results caused by conditions as to ventilation; as to this, no negligence was proven. It is obvious also that the plaintiff's lowered resistance due to syphilis cannot be charged to the defendant. Therefore the sole factor contributing to the lowering of plaintiff's resistance for which defendant could be held responsible is the dampness of the quarters, if it be assumed that negligence as to this might be found from the evidence.

■■ Where a defendant's negligence is not the sole cause of the injury but is accompanied by other concurring causes the defendant is not for that reason alone absolved from liability. Miller v. Union Pacific Ry., 290 U.S. 227, 235, 54 S.Ct. 172, 78 L.Ed. 285; Restatement, Torts, § 432. It is, however, necessary that the negligent conduct be a substantial factor in causing the injury. Restatement, Torts, § 432. To establish such conduct as a substantial factor the plaintiff must by the weight of the evidence indicate that the negligent act of itself was or could be material in causing the injury. In McQuade v. Metropolitan St. Ry., 84 App.Div. 637, 82 N.Y.S. 720, the plaintiff suffered an injury in a railway accident. He subsequently died of inflammation of the brain. The evidence showed that in addition to the injury otitis was present which could also have caused the fatal illness. The court stated at page 638 of 84 App.Div., at page 722 of 82 N.Y.S.: "With these two conflicting theories as to the cause of the inflammation of the brain from which the intestate died, it was for the plaintiff to satisfy the jury by a preponderance of evidence that the direct relation of cause and effect was established between the injuries sustained by the accident and the malady which resulted in death, or that the injuries thus sustained set in motion, aggravated, or in some way made efficient as a cause of death, a disease which, in the absence of the injury, would not have produced death." The court held that the testimony did not meet that requirement as to the material effect of the injury. See also Seifter v. Brooklyn Heights R. Co., 169 N.Y. 254, 62 N.E. 349; Grace v. Fassott, 67 App.Div. 443, 73 N. Y.S. 906; and Weber v. Third Ave. Ry. Co., 12 App.Div. 512, 42 N.Y.S. 789. In all of these cases it was held that the expert testimony did not establish the causal connection between the negligent act and the ultimate disease because the influence of other factors had not been sufficiently eliminated.

■■ In this case the evidence most favorable to the plaintiff as to the causal connection between the defendant's negligence and the incurring of tuberculosis was the testimony of Dr. Lang that in his opinion the conditions of Rey's employment, which included factors other than the dampness, were more likely to have lowered his resistance than his latent tubercular or syphilitic condition. Nowhere is there any evidence that the dampness alone was a vital factor in bringing on the disease. The burden was on the plaintiff to establish by a preponderance of the evidence that the negligence of the defendant caused or was a substantial factor in causing the illness. No evidence was presented from which a jury could so find. Hence the first cause of action was properly withdrawn from the jury.

■■ The district judge dismissed the second cause of action on the ground that the proof was insufficient to satisfy a jury that Rey was not suffering from tuberculosis when he entered the defendant's employ. This puts dismissal upon a ground erroneous in law. If a seaman falls sick while in service, the shipowner is responsible for maintenance and cure, even though the germs of the disease were in his system when he joined the ship; the illness need not be caused by his service. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Lindgren v. Shepard S. S. Co., 2 Cir., 108 F.2d 806. The X-rays of the plaintiff's lungs showed both a chronic, fibroid tuberculosis, evidenced by scar tissue, and an exudative or active tuberculosis. While it was impossible to say how long the fibroid or inactive type had existed, the medical testimony justified a finding that the active type had developed during Rey's service on the ship. Hence dismissal of his action for maintenance and cure was erroneous unless it can be sustained on other grounds.

■ The appellee advances two such grounds. It contends that dismissal was proper because the certificate of the Marine Hospital states as the reason for his discharge "Maximum improvement from hospitalization." Dr. Lang, however, testified that in his opinion Rey should have remained in the hospital for six months or a year longer. This raised an issue of fact as to the need of further hospitalization which should have been left to the jury.

584

There is some evidence that the hospital discharge was granted at Rey's request; hence the appellee argues that his voluntary departure from the hospital bars recovery. It may be true that if a seaman leaves of his own volition and against the orders or advice of his doctors he is precluded from recovering further maintenance and cure from the shipowner. Cf. Baker v. Waterman S. S. Co., 5 Cir., 103 F.2d 987. But the facts at bar are not such as to justify application of this principle by the trial judge. Rey told the hospital doctor that he would spend the summer on a farm. The doctor advised him to return for a check-up during the fall, and ordered his discharge. To conclude from this that Rey's departure was contrary to the doctor's orders or advice stretches the testimony beyond reason. Recovery from tuberculosis is primarily a matter of rest and proper environment and the doctor may well have thought life on a farm would be as beneficial as further hospitalization.

The judgment is affirmed in respect to the first cause of action; it is reversed in respect to the second cause of action and the cause remanded for further proceedings. The appellant is awarded one-half of the costs of appeal.