## HERN v. MORAN TOWING & TRANSPORTATION CO., Inc.

### No. 42.

Circuit Court of Appeals, Second Circuit.

Nov. 3, 1943.

Paul C. Matthews, of New York City (Archibald F. McGrath, of New York City, of counsel), for plaintiff-appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New

York City, of counsel), for defendant-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff is a seaman who brought suit under the Jones Act, 46 U.S.C.A. § 688, in the Southern District of New York to recover his damages resulting from sickness alleged to have been contracted, or to have been aggravated after it had been contracted, because of the negligence of the defendant in permitting his sleeping quarters to become and remain damp; and also to recover for maintenance and cure. The case was tried to a jury, and when the plaintiff rested the defendant moved for a directed verdict upon each cause of action. The motion was granted. The judge held as to the cause of action based upon negligence that the evidence was insufficient to take the case to the jury both on the question of negligence itself and on that of damages. As to the cause of action for maintenance and cure, the judge granted the motion because he understood that the plaintiff consented to that.

It appeared from the evidence that the plaintiff was an able-bodied seaman forty-four years old who sailed on September 10, 1941, from Beaumont, Texas as what is called a day man on the defendant's sea going tug, Edmond J. Moran, which had just been inspected and overhauled there. He was taken sick while the tug was on her way to New Orleans and at that port was sent to the Marine Hospital suffering from pneumonia. While at the hospital he had an attack of coronary thrombosis which has resulted in his permanent disability to work as a seaman. It is undisputed, however, that his recovery from the pneumonia was complete on October 17, 1941, the day on which he was discharged from the hospital at New Orleans.

The circumstances under which the plaintiff became ill were made plain enough at the trial. He had a bunk in what was called the forecastle where he and others in the crew were quartered. That room was below the water line and ventilation was supplied in part at least by a fan in a steel housing which drew air in from the outside through a hole and forced it into the forecastle. When it rained hard enough, or the seas were high enough, water might come in through this outside hole and damage the fan or wet the forecastle or both. The hole could be covered with a steel plate to prevent the entry of water when that was desired but covering the hole in this way so excluded the air that the ventilation from that source was destroyed. There was a manhole about two feet in diameter through the deck to the forecastle below which was open when the tug sailed from Beaumont. This opening had a metal cover and was provided with a gasket designed to make the cover fit water tight when pressed firmly in place and bolted down.

It began to rain a bit late in the morning of September 11th and the plaintiff put the cover on the manhole. He was unable to make it water tight, however, because the gasket had been previously pressed down hard and he now found that he could not screw the nuts on the holding bolts down tightly enough to prevent leakage around the cover into the forecastle even though he used a piece of iron pipe to get additional leverage. He had noticed the hard gasket when he was at work chipping rust near it before the tug left Beaumont the day previously. At that time he told the chief mate about it and asked if there was any more packing. When he was told that the mate had none, he asked for some in the engine room. Getting none there, he so reported to the mate who told him to let it go.

Until about ten o'clock in the morning of September 11th, the weather had been good and the forecastle had remained dry. By four o'clock in the afternoon the wind had become a fresh gale. The waves were then breaking against and over the tug so that the water went into the plaintiff's quarters both through the ventilating duct where the fan was running and around the manhole cover to make the room and the blanket on the plaintiff's bunk damp. The plaintiff was then ordered to put the cover over the outside hole in the duct where the fan was and did so, getting thoroughly soaked in the doing of it. He remained in his wet clothes for about an hour until he found he would not be needed to perform any more work in the wet and then changed and ate his supper. By this time, though not yet sick, he had begun to have "a letdown sort of feeling." He remained in the mess room until about nine o'clock, however, and then went back to the forecastle and to bed in his bunk. That room and his bunk were damp and though some of the water that came in was mopped up, when the mopping stopped it would ac-

cumulate until it would wash back and forth with the motion of the tug on the deck which was the floor of the room. Every time the tug took a heavy sea a pint or more of water came down around the cover. This condition of things continued much the same until the tug entered the Mississippi River two days later and then was in calm water. After going to bed as already stated, the plaintiff remained there sick in his damp bunk until he was taken to the Marine Hospital in New Orleans on September 13th.

 The recital of the above facts, as to which there was no serious dispute, is enough to show that there was evidence on which the alleged negligence of the defendant should have been submitted to the jury provided damages were adequately proved. It is now well settled that a shipowner's duty to provide safe quarters for a seaman includes the maintaining of them in a condition not so excessively damp as to injure his health. Rey v. Colonial Nav. Co., 2 Cir., 116 F.2d 580.

 In dealing with the question of damages the experienced trial judge seems to have been of the opinion that the plaintiff was bound to show that but for the defendant's negligence he would not have been sick at all and to have fallen into error while clinging too tenaciously to that thought. The medical evidence showed that the wetting the plaintiff received when putting on the plate to close the ventilating duct to the forecastle might alone have brought on the pneumonia. That was in line of duty and there is no contention that the defendant is liable to indemnify the plaintiff for any sickness caused by that wetting. The medical evidence also showed that though his pneumonia might have been caused by that wetting it might have been due entirely to the dampness of his bunk and quarters or to both the wetting in line of duty and to his damp quarters. The uncontradicted evidence was that pneumonia germs are apt to be present in the normal mouth and throat and that exposure to cold and dampness is a common cause of the lowering of body resistance to the point where the germs will overcome it and a person so exposed will develop pneumonia. It was also undisputed that such exposure when experienced by a person when the power of resistance is at a "low ebb," as when a person is asleep, is more apt to result in pneumonia than when it happens to one while "moving about and active."

The only witness on this point testified that exposure to dampness was certainly the cause of the pneumonia but stated that he could not determine without some speculation whether the cause was the exposure when the plaintiff was soaked while putting on the steel plate or that which occurred later in the forecastle. He did testify without qualification, however, that, "If the infection was started in the earlier exposure, a continued exposure would tend to continue the infection or make it worse." A fairly persistent attempt by the plaintiff to amplify the evidence concerning the effect of his exposure to dampness in the forecastle was fruitless when questions to that end were objected to and the objections sustained. Yet despite what was, perhaps, an undue curtailment of the plaintiff's right to show fully by competent medical evidence what effect the exposure to dampness in the forecastle had upon his condition, whether or not he was afflicted with pneumonia because of the previous wetting when the exposure in the forecastle began, there was undisputed and credible evidence on which the jury could properly have found that the plaintiff was injured by the dampness of his quarters no matter whether he was a well man or a sick man when that dampness first took effect upon him.

 The plaintiff seaman was not bound to prove that the exposure in the forecastle was the sole cause of the pneumonia. Restatement, Torts, § 432. The two possible causes of the pneumonia were separate and distinct only in point of time; and perhaps not even in that, for the plaintiff's resistance might have overcome the effects of the first exposure and succumbed only to the combined effects of the two. They were of the same general kind and could have been mutually contributing factors. That being so, cases like Pennsylvania R. Co. v. Nelson, 2 Cir., 259 F. 156, are not in point. They illustrate the failure of a plaintiff to carry the burden of proof where either one of two separate and non-co-operating factors is shown to have been the possible cause, for one of which the defendant is liable and for the other not, and there is no preponderance of the evidence in respect to either. This is not an instance where the negligence of the defendant could have done the plaintiff no harm if the possible cause of the pneumonia for which the defendant was not liable was the actual cause of it. Here the only

speculation was whether the wetting which the plaintiff received when he put on the plate had any injurious effect at all, and if it did that went only to the quantum of damages recoverable. Regardless of what might have been the initial cause of the disease, there was, consequently, ample evidence which, if believed by the jury, would have justified its finding that the disability of the plaintiff was in a substantial part, if not wholly, caused by the defendant's negligence. That was enough to take this cause of action to the jury. Rey v. Colonial Nav. Co., supra.

■ The principle which is applicable is well shown by many cases to the effect that where both defendant's negligence and that of a third party (i.e., negligence for which the defendant is not liable) contribute to cause the plaintiff's injury the defendant is not relieved from liability because not wholly at fault. Memphis Consol. Gas & Electric Co. v. Creighton, 6 Cir., 183 F. 552, 555; Miller v. Union Pacific R. Co., 290 U.S. 227, 235, 236, 54 S.Ct. 172, 78 L.Ed. 285. Compare, Jacque v. Locke Insulator Corporation, 2 Cir., 70 F.2d 680.

The record does show that the trial judge was willing to submit the cause of action for maintenance and cure to the jury to determine whether the plaintiff was entitled to anything on that account for any illness he sustained while on the boat. When asked whether he would mention pneumonia or heart trouble the judge replied that he would say "any illness that has been established here." In that state of affairs the plaintiff's attorney did make it plain that he and his client did not desire to have that cause of action submitted "in the present form of the medical proof," and the verdict on that was then directed for the defendant.

■ This was the situation at that time. It appeared that when the plaintiff was discharged from the Marine Hospital in New Orleans on October 17th his pneumonia was cured. He was entitled to no further maintenance and cure on that score, Lindgren v. Shepard Steamship Co., 2 Cir., 108 F.2d 806, and was claiming none. He was, however, still suffering from the effects of the heart attack which he experienced while he was recovering from pneumonia in the hospital at New Orleans and was permanently, though not wholly, disabled because of his heart condition. The plaintiff had tried to show by Dr. Turner, a heart specialist called as a witness, whether he could determine the cause of the coronary occlusion and whether pneumonia had anything to do generally with causing it. His attempt was thwarted by objections sustained by the court. Nor was he allowed to show that future medical care was required because of his heart condition. The court in effect held as a matter of law that the plaintiff's heart trouble was an immaterial factor for the reason that there was no evidence that he was suffering from that ailment while on the tug. This was an over nice distinction resting merely upon names given different kinds of diseases and it really begged the question. If, as the record fairly shows, a competent doctor was prepared to testify that the pneumonia which began on the tug so affected the heart that the coronary occlusion which occurred at the hospital was caused by the pneumonia, what happened on the tug to bring on the pneumonia caused the heart trouble also and it certainly did not matter that the heart was strong enough to keep going without noticeable difficulty until a day or two after the plaintiff was taken off the tug. What complications that actually developed during his sickness were caused by the pneumonia and what, if any, were not was peculiarly a subject on which the jury should have been enlightened by proper evidence. As the exclusion of this testimony left no proof of the cause of action alleged, the plaintiff abandoned nothing when he elected not to have that submitted to the jury. The harmful error in the exclusion of evidence was what created this situation and for that there must be a reversal of the judgment on this cause of action also.

Judgment reversed and cause remanded for a new trial.

L. HAND, Circuit Judge (concurring).

I concur in the reversal of the judgment as to the liability for failure to provide proper quarters, but upon a more limited ground than my brothers. I do not think that the testimony justified a submission to the jury as to whether the plaintiff's damp bunk caused the pneumonia in whole or in part. On the other hand I do think that the judge should have allowed the jury to say whether the plaintiff's illness was aggravated by his being obliged to sleep where he did. I am of course aware that to appraise the damages for the aggravation alone will be well nigh imposs-

ible; yet we do at present leave such issues to juries, and it is extremely likely that its verdict would be less, if it were so instructed, than if it were told to award for the whole illness.

As to the cause of action for maintenance and cure I agree; and I assume that my brothers agree that this is in any event only alternative relief to the action for failure to provide proper quarters.