## HILTZ v. ATLANTIC REFINING CO.
### No. 8717.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 19, 1945.

Decided Aug. 2, 1945.

See also, D.C., 57 F.Supp. 308.

Abraham E. Freedman, of Philadelphia, Pa. (Freedman & Goldstein, of Philadelphia, Pa., on the brief), for appellant.

Otto Wolff, Jr., of Philadelphia, Pa. (Lewis, Wolff & Gourlay, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS and GOODRICH, Circuit Judges, and LEAHY, District Judge.

BIGGS, Circuit Judge.

The plaintiff, Hiltz, an engineer on vessels operated by the defendant, Atlantic Refining Co., brought the suit at bar pursuant to the provisions of the Jones Act [1] to recover damages for personal injuries allegedly sustained in the course of his employment by reason of the defendant's negligence.

Hiltz endeavored to prove in the court below that he contracted tuberculosis of the lungs or a tuberculosis of his lungs was aggravated because the defendant furnished him with improperly ventilated sleeping quarters for a period of time on board the last ship on which he sailed. But he did not so allege in his pleading. The complaint states that "Solely by reason of the negligence of the respondent and its agents [in affording him improper sleeping quarters], complainant suffered a cold; his resistance was lowered and he has become afflicted with tuberculosis; * * *." This allegation is specific. As the trial progressed, however, the plaintiff changed his position and endeavored to prove in substance: (1) That the defendant's negligence precipitated active tuberculosis or (2) that that negligence aggravated a preexisting active tuberculosis of his lungs. The defendant was not surprised by the course which the trial took and makes no assertion to that effect in this court. The jury rendered a verdict for the defendant and, upon judgment, the plaintiff appealed.

Hiltz, having obtained an assistant-engineer's license from the Department of Commerce, applied to the defendant for employment. On July 14, 1941 he was given a physical examination by a physician employed by the defendant and was pronounced to be in good physical condition. This examination did not include X-rays of his lungs or a sputum test. Hiltz was then assigned to the Oil Tanker "Powell" and made two trips on this vessel. These voyages covered a period of thirty-four days. He was then commissioned to the Oil Tanker "Van Dyke". He sailed on his first trip on that vessel on October 8, 1941. He had remained ashore for five days before joining the ship for this voyage in order to have a sore throat treated by a physician.

Hiltz's sleeping quarters on the "Van Dyke" were first amidships near those of the ship's captain. Later, he quartered with the other engineer officers on the poop deck, directly over the engine and fire rooms. The ship possessed a ventilating system designed to drive fresh air into the quarters occupied by Hiltz. The ventilating system, however, drew in hot, stale air from fire room exhausts. The "Van Dyke" was engaged in making voyages from Philadelphia to Southern ports. The last voyage on which Hiltz sailed on her was to Venezuela. For a period not exceeding 40 days Hiltz from time to time slept out on deck on a cot in order to escape the heat of his badly ventilated quarters. He stated that about the middle of his last voyage he began to feel as if he had contracted influenza. He had chills and developed a cold and a cough. He informed the captain that he wanted to be relieved of duty on the next trip in order that he might go ashore to get rest and medical attention.

Hiltz went to the Hahnemann Hospital in Philadelphia on November 17 or 18, 1941. There was evidence that he had a temperature of 103.4° when he was admitted. His lungs were X-rayed. The X-rays showed he was suffering from advanced tuberculosis of both lungs and that his left lung possessed a cavity five centimeters in diameter. He was given pneumothorax treatment. While at the hospital he developed

---

[1] 41 Stat. 1007. See 46 U.S.C.A. § 688.

empyema of the lungs. On December 22, 1941 he was transferred to Eagleville Sanatorium. He remained at the sanitorium until May 10, 1943 when he was sent home as an arrested case.

The plaintiff's past medical history as submitted to the jury was cogent. It showed that X-rays of Hiltz's lungs, taken about 1935, demonstrated that he had had a cured lesion. Prior to 1935 he had undergone an operation for the removal of a diseased cervical gland. A diseased cervical gland is some indication of tuberculosis. The plaintiff's father had died of advanced tuberculosis and his sister had had definite symptoms of tuberculosis. Since tuberculosis has been demonstrated to be a germ disease, the jury could have found that Hiltz had contracted tuberculosis from a member of his family.

■■ The jury could not have found from the medical testimony that the plaintiff had inactive[2] tuberculosis of the lungs at the time when he was first employed by the defendant and that his disease was "precipitated", i. e. brought to a crisis, by his sleeping quarters on the "Van Dyke." The evidence to support such a finding does not amount to a scintilla and, accordingly, the jury was justified in rejecting this contention of the plaintiff. Hiltz occupied the badly ventilated quarters, as we have stated, for not more than 40 days immediately preceding his admission to the Hahnemann Hospital. If the jury believed the testimony of the medical witnesses who testified, it would have been compelled to find that Hiltz's tuberculosis became activated, i.e. precipitated, before he occupied the sleeping quarters on the "Van Dyke" which were in fact dangerous to his health.[3] These witnesses, acknowledgedly expert in the diagnosis and treatment of tuberculosis, testified that a lesion such as that shown by the Hahnemann Hospital X-rays could not have been formed in Hiltz's lung in a period of 40 days.[4]

■ The issue of aggravation of Hiltz's active tuberculosis by his illy ventilated sleeping quarters wears a different aspect. As to aggravation, as we have stated, the evidence shows that Hiltz had a rather high temperature when he was admitted to the Hahnemann Hospital. When he entered the Eagleville Sanitorium his sputum was positive. He became ill on board the "Van Dyke" and had symptoms of active illness. When he was examined by the defendant's physician on July 14, 1941 his lungs were tested, apparently by stethoscope, and the physician apparently found no cavity in either lung. The lesion might not have been very substantial at that time. Hiltz was able to attend to his duties until the very end of his last voyage on the "Van Dyke". No evidence was produced that his messmates considered him to be ill. There was medical testimony that the bad ventilation of Hiltz's sleeping quarters could have aggravated his illness, at least by causing him fatigue. While it might be argued to the jury with considerable justification that the evidence of aggravation of Hiltz's disease by his sleeping quarters was not very ponderous since he worked under conditions definitely deleterious to a person

---

[2] The medical testimony distinguished between states of "active" and "inactive" tuberculosis of the lungs.

[3] The maintenance of improperly ventilated living quarters for a member of a ship's company constitutes negligence. See Hern v. Moran Towing & Transportation Co., 2 Cir., 138 F.2d 900; Fratta v. Grace Line, 2 Cir., 139 F.2d 743, and Thunberg v. Panama R. Co., 2 Cir., 139 F.2d 567. Cf. Rey v. Colonial Nav. Co., 2 Cir., 116 F.2d 580.

[4] For example, Dr. A. J. Cohen testified: "These cavities form very slowly. First you have the infiltration period; then you have the caseation period; then you have the necrose period; and that goes on months and months before a cavity five centimeters develops. It does not happen like a case of appendicitis. It takes months, months, months, months, for this thing to develop to that point."

Dr. Cohen was asked: "So there is no doubt that this man had tuberculosis in an active stage for six months before 1941?" He answered, "I haven't any doubt. I haven't any doubt that this man had symptoms for six months and much longer than six months prior to his admission to Hahnemann."

Dr. Cohen also testified in response to a hypothetical question which fairly included the circumstances surrounding Hiltz on the "Van Dyke" that Hiltz's sleeping out of doors on the deck from October 8, 1941 until November 15, 1941 (the date he left the ship) would not have precipitated an "inactive case" of tuberculosis to the condition that Hiltz was in on November 19, 1941, when the X-rays were made at the Hahnemann Hospital.

The testimony of most of the other medical witnesses was to the same effect.

afflicted with tuberculosis,[5] the issue of aggravation definitely became a jury question, as was the extent of the damage suffered by way of aggravation, if any. See Hern v. Moran Towing & Transportation Co., 2 Cir., 138 F.2d 900, 902, 903.

Coming now to the charge to the jury, we find parts of it to be erroneous as to the issue of aggravation. The court stated to the jury: "If you find that the defendant's negligence aggravated a pre-existing condition in this plaintiff, then your verdict must be for the plaintiff, provided you also find that the plaintiff was free from an active case of tuberculosis when he joined the ship [the 'Van Dyke']. *If he had an active case of tuberculosis when he joined the ship, your verdict must be for the defendant, even though you find that the defendant's negligence aggravated his condition.*"[6] A number of interrogatories were also submitted to the jury. These and the answers to them, follow: "1. Was the plaintiff already infected with active tuberculosis when he first entered the defendant's employ on or about August 26, 1941?" Answer: "Yes." "2. Was the plaintiff already infected with active tuberculosis on October 8, 1941, when he was first assigned to sleeping quarters on the port side of the poop deck?" Answer: "Yes." "3. Was the defendant negligent in the manner it heated and ventilated plaintiff's sleeping quarters after October 8, 1941?" Answer: "Yes." "4. If your answer to Question 3 is 'yes', was this negligence the proximate cause of the plaintiff's illness or a substantial factor in precipitating active tuberculosis after October 8, 1941?" Answer: "No." "5. Is your verdict for the plaintiff or for the defendant?" Answer: "Defendant." [7]

It will be observed that in that portion of the general charge which we have quoted and in the first three interrogatories the learned District Judge laid emphasis upon a state of "active" tuberculosis as distinguished from an "inactive" or "dormant" tuberculosis. He charged in effect that if the defendant's negligence aggravated an inactive tuberculosis the plaintiff could recover; but if the defendant's negligence aggravated an active tuberculosis, the plaintiff was not entitled to a verdict. In this lies error. If the defendant's negligence aggravated an active tuberculosis, the plaintiff was entitled to recover. As we have stated the extent of the injury caused by the aggravation measures the quantum of damages to be assessed by the jury.

The plaintiff insists that in view of the affirmative answer to the third interrogatory we should restrict a new trial solely to the question of the measure of damages in accordance with Rule 59(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In view of the fact that there is no finding by the jury that the defendant's negligence was the cause of any aggravation of the plaintiff's diseased condition, the futility of the suggestion is apparent. Moreover, the ends of justice require both the plaintiff and the defendant to have their respective days in court at a new trial.

Accordingly the judgment is reversed and a new trial ordered.

---

[5] In hot boiler or fire rooms.

[6] Emphasis added.

[7] The two remaining interrogatories are immaterial to the issues presented by the appeal. They required the jury in case it rendered a verdict for the plaintiff to specify amounts of damages to be awarded for pain and suffering, loss of wages, and so forth.